**Clem PEDEN, Appellant,**

v.

**J. R. CARPENTER, Appellee.**

**No. 8504.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 11, 1974.

Shelton & Gilkerson (Danny E. Hill), Lubbock, for appellant.

Hurley & Sowder (Dennis L. Fullingim), Lubbock, for appellee.

REYNOLDS, Justice.

The defense of payment was interposed to a suit on a note. The evidence supports the trial court's finding that the payments made were lawfully applied to another debt owed by the maker of the note to the owner. Affirmed.

Plaintiff J. R. Carpenter instituted this suit to recover on a demand note executed by defendant Clem Peden on October 17, 1968, and made payable to Carpenter in the sum of $2,500, bearing interest from maturity at the rate of 6½% per annum. Peden pleaded payment. The note, introduced in evidence, reflects no payment credited thereon, Carpenter having applied the payments Peden made to a different debt claimed to be owed him by Peden. The trial court, sitting sans jury, entered judgment for Carpenter for the total sum represented by the note after hearing the evidence next summarized.

Carpenter undertook to have an oil well drilled on a lease he owned in Garza County. He sold one-eighth interests in the well for $2,500 under an agreement that he would have the well drilled to the casing point without further cost to the one-eighth interest owners and, if the showing was satisfactory, the well would be completed by each owner paying his pro rata share of the completion costs.

Peden approached Carpenter to buy a one-eighth interest in the well. Peden did not have the ready cash to pay for the interest. After some discussion, Carpenter agreed to advance the $2,500 for Peden's one-eighth interest in the well and, as evidence thereof, Peden executed the note made the subject matter of this litigation. Peden stated to Carpenter that he would pay the note when he sold some apartments he owned in Houston.

The well was drilled by B&H Oil Company. When the casing point was reached at 3,334 feet, the well appeared promising and it was completed. During the completion work, periodic statements of cost were mailed from the drilling company. If the owners did not readily respond with payment to the drilling company, Carpenter paid the amount of the cost statement and looked to the owners for reimbursement.

In the latter part of October of 1968, Peden sold his apartments realizing some $1,700 to $1,800 therefrom. Two of his personal checks dated November 8, 1968, and December 18, 1968, in the amounts of $2,200 and $300, respectively, were made payable to the order of Carpenter and mailed to him. The checks were not noted as to their purpose and they were unaccompanied by any transmittal information. Peden never notified Carpenter that he had sold the apartments and, although Peden asked for a copy of the note when Carpenter later demanded payment, Peden never requested that his note be returned to him marked paid. Peden also mailed Carpenter two other checks in December, one being for the sum of $800. Carpenter endorsed the checks and deposited them or the proceeds therefrom in the account of the drilling company for completion costs.

Neither Carpenter nor Peden could testify to the amount of completion costs for which Peden had been billed at the time the checks were issued. Carpenter stated that the drilling company, which kept the completion cost records, had moved out of state and that he had no way to secure that information. Nevertheless, Carpenter testified that the $2,200 and $300 checks ". . . went through B&H Oil Company for completion costs, and it seems like that first check was the completion—it was around twenty-seven hundred dollars, and that was for the core and for the fracing (sic) of the well, and for the casing and the pipe. It seems like an eighth interest of it was just under three thousand dollars. And the total completion on the well was eighty-nine hundred and some-odd dollars for each eighth interest in it." Peden's testimony was that he has not paid everything for which he was billed.

Peden attacks the judgment as being without sufficient evidential support for the court's finding of lawful application of his first two checks to "something else" other than the note. In this connection, Peden contends that there was an agreement that the note would be paid from the proceeds of the sale of his apartments and, since the $1,700 or $1,800 sale proceeds were included in his November check, Carpenter was required to apply that check and the $300 December check to payment of the note, leaving insufficient evidential support for the ultimate finding that Peden owed the $2,500 note.

■■ The general rule is that where a debtor makes payment to his creditor without directing the manner of application of the payment, the creditor is privileged to apply the payment to any one of the various debts owed him by the debtor, Morgan v. Morgan, 406 S.W.2d 347 (Tex.Civ.App.—San Antonio 1966, no writ), and the creditor is not bound by the debtor's uncommunicated intentions as to the application of the payment. Carey v. Ellis, 46 S.W.2d 1012 (Tex.Civ.App.—San Antonio 1932, no writ). Thus, when Carpenter introduced the demand note reflecting no credits thereon and testified that he was the owner and the holder thereof and that it was due and unpaid, he established a prima facie entitlement to judgment, subject only to his recovery being defeated by Peden's proof of payment. See Lemon v. Walker, 482 S.W.2d 713 (Tex.Civ.App.—Amarillo 1972, no writ).

■ Although Peden said, and Carpenter understood Peden to say, that Peden would pay the note when he sold his apartments, Carpenter did not admit that there was an agreement that the note would be paid from the sale proceeds. The conflicting evidence merely raised a fact issue as to whether the payments made by Peden were to be applied to the note under an express or tacit agreement of the parties or whether, under all the circumstances, Carpenter was at liberty to apply the payments undesignated as to application to payment of the completion costs billed to Peden. The trial judge had the duty to assess the credibility of the witnesses and the weight to be given their testimony and, there being sufficient evidence of probative force to support the trial judge's implied finding that there was no agreement that the payments be applied to the note, we are bound by the finding and we are not authorized to substitute a different finding. Hendershot v. Amarillo National Bank, 476 S.W.2d 919 (Tex.Civ.App.—Amarillo 1972, no writ).

■■ Peden further contends that even if there was no agreement binding Carpenter to credit the two checks totalling $2,500 to payment of the note, these payments were required as a matter of law to be applied first to the oldest debt which, in this case, was the note. A careful perusal of the authorities cited for this proposition reveals that the rule announced is that, in the absence of direction or an agreement as to application, payment will be applied as a matter of law to the priority of time *if no specific application of the payment has been made to any particular account or to any particular part of the account.* See,

**22**

e. g., Pyle v. Byrne, 331 S.W.2d 507 (Tex. Civ.App.—Texarkana 1959, writ ref'd n. r. e.). Here, however, since *Carpenter* made specific application of the undesignated payments when he received them, the law does not operate to re-apply them to the oldest debt. Moreover, absent direction or agreement for application of payment, it long has been established that in the situation presented, the creditor may apply payment to an open account in preference to a note. Matossy v. Frosh, 9 Tex. 610 (1853); Carey v. Ellis, supra. The record being clear that Peden gave no direction for, and that the trial judge was amply justified in finding there was no agreement as to, application of the payments, Carpenter was lawfully privileged to credit the payments to Peden's indebtedness for completion costs rather than to the note.

The points of error do not present reversible error. They are overruled.

The judgment of the trial court is affirmed.