John N. MASTIN, Appellant,

v.

Nita R. MASTIN, Appellee.

No. 04–00–00428–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 29, 2001.

Rehearing Overruled Jan. 17, 2002.

Richard D. Woods, Law Office of Richard D. Woods, Robert J. Myers, Robert J.

Myers & Associates, San Antonio, for Appellant.

Sam C. Bashara, Law Offices of Sam Bashara, P.C., San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, CATHERINE STONE, Justice, and SARAH B. DUNCAN, Justice.

## OPINION

TOM RICKHOFF, Justice.

Nita Mastin sued her former husband, John Mastin, for breach of their contractual alimony agreement. All issues relating to the alimony arrearage were determined in Nita's favor through partial summary judgment. The issues of acceleration of future payments and attorney's fees were resolved in Nita's favor after a bench trial. Because we conclude that Nita did not give clear notice of an intent to accelerate future payments, we reverse in part.

## BACKGROUND

Nita and John's divorce decree obligated John to pay Nita contractual alimony as follows:

Petitioner, John N. Mastin agrees to pay to Respondent, Nita R. Mastin, monthly contractual alimony in the sum of $1,289.90. Said monthly payment shall increase in an amount equal to any increase in interest only on that certain [mortgage] note due to San Antonio Savings Association, or its successor, for the real property herein awarded to [Nita], according to the Renewable Rate Note dated November 23, 1983, and the Deed of Trust of even date therewith. Likewise, in the event of a decrease in the variable interest rate on said note, the contractual alimony payment shall decrease accordingly. [John] may pre-pay any portion, at his option without penal-

ty, provided that [John] gives [Nita] sixty (60) days advance notice . . . .

The contractual alimony payments continue as long as Nita is alive, remains the owner of the home, and the note remains unpaid. The decree also provides that John's contractual alimony payments decrease if the home is sold.

After making the monthly payment for a number of years, John began to pay Nita $1,000 per month and Nita accepted the payments for eight years. In May and June 1995, Nita sent letters to John complaining that he was under-paying his alimony. On December 14, 1999, Nita sent John a letter demanding payment and warning that if a lawsuit was required, acceleration was a reserved remedy. Nita sued John in January 2000. John filed a general denial.

The trial court rendered a partial summary judgment in Nita's favor, in which the court held that the alimony agreement was unambiguous and John was required to pay Nita $1,289.90 per month adjusted annually to reflect the increase or decrease in the interest rate on the mortgage note. The court found John in arrears in the amount of $19,524.44, with interest in the amount of $2,151.45. After a bench trial, the court signed a final judgment, incorporating the partial summary judgment, ordering that Nita recover from John $105,324.06, with interest, plus $25,354.94 in attorney's fees, $800 in accounting fees, and $23,500 if John pursued an unsuccessful appeal.

## PARTIAL SUMMARY JUDGMENT

John asserts the trial court erred in rendering summary judgment in Nita's favor because the contractual alimony agreement is ambiguous, there are fact questions as to how Nita applied his payments to her and as to the amount of any arrear-

age, and the trial court ignored his affirmative defenses.

In her summary judgment affidavit, Nita stated, "The principal and interest monthly payments to San Antonio Savings and Loan on the date of our divorce was $962.64. The total monthly payment to San Antonio Savings and Loan on the date our divorce was heard in October, 1989, which included an escrow for taxes and insurance, was $1289.90." John argues the alimony payment should consist only of the principal and interest on the mortgage note. He asserts the agreement is ambiguous because it was never his intention to pay the taxes, insurance, or homeowner's association fees associated with the house; therefore, there is a fact issue as to whether the $1,289.90 alimony payment includes amounts other than principal and interest.

■ Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Columbia Gas Trans. Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Columbia Gas*, 940 S.W.2d at 589; *Coker*, 650 S.W.2d at 393. An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994). Extrinsic evidence is inadmissible to contradict or vary the meaning of the unambiguous language of the written contract. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995).

■ On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, and creates a fact issue as to

the parties' intent. *Id.* at 520. An ambiguity in a contract may be said to be "patent" or "latent." A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. *Id.* If a latent ambiguity arises from this application, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. *Id.*

■ Here, the parties' understanding as to the manner in which the contractual alimony payment was calculated is relevant only if the agreement is ambiguous. It is not. The clear language of the agreement states that the contractual alimony payment is a specific amount, which may vary based only on a single expense—the interest rate on the mortgage note. The agreement does not tie the contractual alimony amount to any other expense that might—or might not—be associated with the home or the mortgage note. We hold that the contract is not reasonably susceptible to more than one interpretation; therefore, the trial court did not err in determining the decree was unambiguous, and we affirm the summary judgment on that issue.

■ John next complains there is a fact issue with regard to how Nita applied his payments. It is undisputed that John sent Nita a single monthly check and he did not differentiate between his monthly child support payment and his monthly alimony obligation. Nita credited the payment first toward the child support obligation and the balance toward the alimony obligation. The general rule is that where a debtor makes payment to his creditor without directing the manner of application of the payment, the creditor may ap-

ply the payment to any one of the various debts owed him by the debtor. *W.E. Grace Mfg. Co. v. Levin*, 506 S.W.2d 580, 585 (Tex.1974). The creditor is not bound by the debtor's uncommunicated intentions as to the application of the payment. *Peden v. Carpenter*, 516 S.W.2d 19, 21 (Tex. Civ.App.—Amarillo 1974, no writ). Because John did not designate how Nita should apply his monthly payment, he cannot now create a fact issue by asserting that she should have applied the payment first to his contractual alimony obligation and second to his child support obligation.

 John also contends the trial court erred in not considering his affirmative defenses. In his response to Nita's motion for summary judgment, John asserted only that Nita was estopped to deny he was responsible for only principal and interest on the note and estopped from asserting he was responsible for taxes and insurance.[2] On appeal, John argues that Nita accepted his lesser payments for several years without complaint, giving rise to the affirmative defenses of estoppel, payment, accord and satisfaction, and waiver. To properly preserve a defense for purposes of appeal, John had to expressly present the defense to the trial court in the summary judgment proceeding. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677–79 (Tex.1979). Because John did not raise these defenses, other than the one estoppel argument raised in his response to the motion for summary judgment, these defenses were waived.

Finally, John asserts the method by which the experts calculated the alleged alimony arrearage creates a fact issue. Nita's motion for summary judgment was supported by the affidavit of her accountant, who explained how she calculated the arrearage of almost $20,000. John's response was supported by a controverting affidavit from his accountant, who explained how he calculated an overpayment by John to Nita of approximately $30,129.

 John's expert's opinion has no probative value because it is based on erroneous assumptions—that the alimony obligation was limited to principal and interest only and that Nita improperly applied John's payments to her. Because we already have held that these assumptions are incorrect, John's summary judgment evidence is not sufficient to create a fact issue. *See Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex.1995) (an expert's opinion has no probative value and cannot support a judgment if that opinion is based on assumed facts which vary materially from actual, undisputed facts).

## ACCELERATION OF DAMAGES

After a bench trial, the court accelerated John's contractual alimony payments in the amount of $82,528.22.[3] John first complains that Nita did not give him notice of her intention to accelerate. Nita contends John waived his complaint because he did not file special exceptions or raise failure to provide him notice as an affirmative defense in his answer or response to Nita's motion for summary judgment.

---

2. In John's amended answer, he pled "the affirmative defenses of payment and accord and satisfaction in that [he had] paid all sums required of him to be paid under the contract, and [had] pre-paid a portion of his obligation under the contract."

3. The total amount adjudged against John was $105,324.06. This amount includes the arrearage contained in the summary judgment award, unpaid amounts from the date of summary judgment to the date of trial, and the accelerated amount of the mortgage note of $82,528.22.

A plaintiff or defendant who desires to rely on either an affirmative defense listed in the rules of civil procedure or upon any other matter that constitutes an avoidance of an opposing party's claim must plead that defense. *See* TEX.R. CIV. P. 94. Lack of notice is an affirmative defense that must be pled. *Espinoza v. Victoria Bank & Trust Co.,* 572 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (lack of notice waived by failure to plead); *Micrea, Inc. v. Eureka Life Ins. Co. of America,* 534 S.W.2d 348, 357 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.) (same).

However, "when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX.R. CIV. P. 67; *see also Green v. Parrack,* 974 S.W.2d 200, 202 (Tex.App.—San Antonio 1998, no pet.) (suggesting res judicata may be tried by express or implied consent as if raised in pleadings). Trial by consent is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried the unplead issue. *Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex.App.—Houston [1st Dist.] 1993, writ denied). It is not intended to establish a general rule of practice and should be applied with care, and never in a doubtful situation. *Id.* To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Id.*

Here, John brought the issue of lack of notice to the trial court's attention during the bench trial. When Nita introduced into evidence the mortgage statement, John objected to the attempt to accelerate the indebtedness on several grounds, one of which was that he was not given proper notice of acceleration or an opportunity to cure any default. Nita did not object to the lack of pleadings, but responded to John's argument in kind. The parties argued over whether the following, contained in Nita's prayer for relief in her petition, constituted notice:

> Nita prays that if necessary John be cited to appear and answer herein; that upon trial she have judgment against him for the total amount of alimony arrearage ...; that she be granted acceleration if she so requests at the time of trial; that she be granted her attorney's fees....

The trial court stated it was not aware of any requirement for specific notice and overruled John's objection. Under these circumstances, we find that the issue of notice was tried by consent; therefore, John did not waive lack of notice as a defense. We next consider whether Nita's prayer for relief was sufficient to provide John with notice of acceleration.

Acceleration is a harsh remedy with draconian consequences for the debtor and Texas courts look with disfavor upon the exercise of this power because great inequity may result. *See e.g., Davis v. Pletcher,* 727 S.W.2d 29, 35 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) (exercise of the power of acceleration is a harsh remedy and deserves close scrutiny). When a creditor has the option to accelerate a debt upon the debtor's default, equity demands notice be given of the intent to exercise the option. *Ogden v. Gibraltar Sav. Assoc.,* 640 S.W.2d 232, 233 (Tex. 1982); *see also Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 895 (Mauzy, J., concurring) (Tex.1991) (noting that Supreme Court has long recognized the harshness of the remedy of acceleration and has sought to mitigate its effects by imposing equitable requirements on the holder of a promissory note).

■ The harshness of the option of accelerating the maturity of an extended obligation requires both a strict reading of the terms of the option and notice to the debtor. *Shumway*, 801 S.W.2d at 893. This same principle also requires that notice of intent to accelerate and notice of acceleration be clear and unequivocal. *Id.* Given that an option to accelerate an obligation can neither be created nor exercised except in terms clear and unequivocal, it follows that a waiver of the right to notice of the intent to exercise an acceleration option cannot be effective unless it meets equally exacting standards. *Id.*

■ Although the cases requiring unequivocal language regarding acceleration and waiver involve promissory notes, the principle should apply with equal force to any long-term debt. Most especially, the principle should be applied to a debt arising in a divorce decree where the potential animosity between the parties demands that they deal with each other on arms-length terms. Here, the divorce decree gave Nita the option to accelerate, stating, "In the event of a default on the alimony, [Nita] may accelerate the remaining amounts due and [John] will pay [Nita's] attorney's fees and all costs in enforcing payment thereof. [John] will not be in default until thirty-one (31) days following the due date." John did not waive his right to receive notice. Nita's prayer for relief did no more than repeat the option conferred in the divorce decree. *See Ogden*, 640 S.W.2d at 234 ("may" language was not clear and unequivocal notice that Gibraltar would accelerate). Because Nita's prayer for relief did not give unequivocal notice of an intent to accelerate, any attempted acceleration was ineffective, and we reverse the judgment on that issue.

## ATTORNEY'S FEES AND ACCOUNTING COSTS

John asserts the attorney's fees and costs awarded to Nita are excessive and unreasonable. The trial court awarded Nita $25,354.94 in attorney's fees, $800 in accounting fees, and $23,500 if John pursued an unsuccessful appeal.[4]

■ In awarding attorney's fees, the trial court, as the trier of fact, must take into account various factors such as the nature and complexity of the case, the nature of the services provided by counsel, the time required for trial, the amount of money involved, the client's interest that is at stake, the responsibility imposed upon counsel, and the skill and expertise required. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex.1990). The allowance of attorney's fees rests within the sound discretion of the trial court and will not be reversed without a showing of an abuse of that discretion. *Id.* Generally, the testimony of an interested witness, though uncontradicted, does no more than raise a fact issue to be determined by the jury. *Id.* at 882. However, an exception to this rule exists where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct, and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon. *Id.*

---

4. Although John phrases his issue as complaining about the reasonableness of both the attorney's fees and accounting fees, his argument focuses only on the attorney's fees. John does not contest the reasonableness of appellate attorney's fees. Because his complaint as to the reasonableness of the accounting fees is inadequately briefed, this argument was not preserved for appellate review, and we consider only whether the trial court abused its discretion in its award of attorney's fees in the amount of $25,354.94.

■ Sam Bashara, Nita's attorney, testified that he was familiar with fees charged in connection with cases such as the one here and was familiar with the reasonableness of such charges. Nita and Bashara entered into a contract, under which she agreed to pay Bashara $350 per hour, plus expenses. When they entered into the contract, Bashara was charging $400 per hour. A copy of Bashara's detailed time sheet was admitted into evidence, without objection. Bashara billed 72 hours, included in which was time spent on various correspondence, Nita's motion for summary judgment, written discovery, and mediation. Bashara believed the total fees charged were reasonable and the services he provided necessary. Bashara said he did not conduct depositions in an attempt to handle the dispute in an expeditious manner and to limit his fees.

On appeal, John contends Bashara's fees were excessive because Bashara considered this case to be straightforward and simple. John argues that his attorney's testimony regarding fees was more compelling given the work devoted to the case. John was represented by Robert Meyers, who testified that he thought a less experienced attorney, charging a lower rate, could have accomplished the same result given the nature of the issues in dispute. Meyers' contract with John called for an hourly rate of $250.

We conclude that the court did not abuse its discretion in awarding $25,354.94 in attorney's fees to Nita.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

John complains he has been harmed by the trial court's failure to make findings of fact and conclusions of law, a complaint that is contradicted by the findings and conclusions found in the record before this court.

### CONCLUSION

We reverse the trial court's judgment on the issue of the acceleration of future payments and remand the case for further proceedings consistent with this opinion. We affirm the judgment in all other respects.