**Opinion issued June 11, 2013.**



In The

# Court of Appeals

### For The

# First District of Texas

_____

### NO. 01-12-00670-CV

_____

## PATRICK A. HICKEY AND CECILIA P. HICKEY, Appellants

## V.

## THE HUNTINGTON NATIONAL BANK, Appellee

---

**On Appeal from the 190th District Court**
**Harris County, Texas**
**Trial Court Case No. 1170468**

---

## MEMORANDUM OPINION

Patrick A. Hickey and Cecilia P. Hickey appeal from the summary judgment

granted in favor of The Huntington National Bank.[1]  The Bank foreclosed on the

---

[1]     The Hickeys' loan originated with Union Federal Bank, which was subsequently acquired by Sky Financial Group, Inc. and then by Huntington National Bank though a merger in 2007.  For simplicity, we will refer to appellee as the Bank.

Hickeys' home in July 2011. Shortly thereafter, the Hickeys sued the Bank seeking a declaratory judgment that the four-year statute of limitations barred the foreclosure. The Bank filed a no-evidence motion for summary judgment arguing that there was no evidence that the Bank's cause of action accrued in 2004, as the Hickeys alleged. The trial court granted the motion and entered a take-nothing judgment. In their sole issue on appeal, the Hickeys contend that the trial court erred in granting summary judgment in the Bank's favor because the four-year statute of limitations accrued at the latest in 2004 and, therefore, the Bank's foreclosure in 2011 was barred by the statute of limitations. We affirm.

## Background

On November 19, 2001, the Hickeys purchased a home in Houston, which was secured by a promissory note and a deed of trust.[2] The note contained an acceleration clause that provided that upon default, "after the lender give[s] any legally required notice and opportunity to cure the default, [the lender] at [its] option . . . may make all or any part of the amount owing by the terms of this Note immediately due." The deed of trust contained a similar provision: the "Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter."

---

[2] The note from the Bank was subordinate to another note with another institution, the proceeds of which were also used to fund the purchase of the property.

The Hickeys missed their September 2003 loan payment. On January 12, 2004, the Bank sent them a default letter:

> You are in default to [the Bank] on the Note and Deed of Trust relating to the above-referenced property located at 11610 Manor House Lane, Houston, Texas, as a result of your failure to make your monthly payments of $1,258.59 that were due and payable for the month of September, 2003. As of the date of this Notice, your arrearages total $6,292.95. You have also incurred late fees in the amount of $139.03, title work fees of $124.00 and appraisal fees of $220.00. Therefore, the total arrearage owed as of the date of this letter is $6,776.98.

> You are further notified, that in the event the default is not cured on or before January 20th, 2004, [the Bank], at its option, may require immediate payment in full of all sums secured by the Deed of Trust without further demand and may invoke the power of sale and any other remedies permitted by applicable law. [The Bank] shall be entitled to collect all expenses in pursuing the remedies provided in the Note and Deed of Trust, including but not limited to reasonable attorney fees.

In February 2004, the Bank hired Rocap Witchger, LLP, a lawfirm in Indiana, to foreclosure on the Hickeys' property. Rocap Witchger then hired local counsel in Houston.

On April 5, 2004, the Bank sent a letter to the Hickeys acknowledging receipt of a $10,255.75 payment. The letter informed the Hickeys that this payment covered the "October 1st, 2003 payment through and including the April 1st, 2004 payment" and that the "[f]oreclosure action was put on hold . . . when [the Bank] received [the] reinstatement proceeds." It also noted that a $700 balance for attorney's fees and costs remained unpaid. Although the record is not

3

entirely clear on the details, the Hickeys resumed making payments on the note for some time. But several years later, they fell behind again.

In 2011, the Bank notified the Hickeys that they were in default and that the note was accelerated. In response, the Hickeys sent several letters to the Bank protesting the foreclosure and arguing that the Bank's cause of action accrued in 2004 and, therefore, the Bank's right to foreclose on the property expired in 2008. The Bank foreclosed on July 5, 2011, and the Hickeys sued the Bank seeking a declaratory judgment that the four-year statute of limitations barred the Bank's foreclosure action.

The Bank moved for summary judgment, alleging that there was no evidence that the Hickeys' note was accelerated in 2003 or 2004, and, therefore, no evidence that the Bank's cause of action accrued at that time. Specifically, the Bank claimed:

> there is no evidence that the defendant Bank sent an intent to accelerate letter to the Hickeys in 2003; there is no evidence that the defendant Bank sent a notice of acceleration letter to the Hickeys in 2003 or 2004; and there is no evidence that the Hickeys did not make payments to the defendant Bank after 2004.

In response, the Hickeys claimed that they were not required to produce evidence that they received notice of intent to accelerate and notice of acceleration. They argued that the evidence of their 2003/2004 default, combined with evidence that the Bank hired attorneys to bring a foreclosure action in 2004, was sufficient

4

to show that the cause of action accrued by 2004, at the latest. The trial court granted the Bank's summary-judgment motion. The Hickeys appealed.

## Accrual

On appeal, the Hickeys contend the trial court erred in granting summary judgment in the Bank's favor because the statute of limitations on the Bank's foreclosure action expired before the Bank brought the action in 2011. The Hickeys contend that the note was accelerated upon their default in 2003/2004 and, therefore, the four-year limitations period began at that time. In keeping with this argument, the Hickeys contend that they were not required to adduce evidence that the Bank provided them with either notice of intent to accelerate or notice of acceleration.

## A. Standard of Review

We review de novo the trial court's ruling on a motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to each

of the elements specified in the motion. *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 375 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Hahn*, 321 S.W.3d at 324.

"The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements." *Essex Crane*, 371 S.W.3d at 376 (quoting *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

## B.    Applicable Law

"A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(b) (West 2002). When this four-year statute of limitations expires, the real-property lien and the power of sale to enforce the lien become void. *Id.* § 16.035(d). If "a note or obligation payable in installments is secured by a real property lien, the four-year limitations period does not begin to run until the maturity date of the last

6

. . . installment." *Id.* § 16.035(e). Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

Importantly, if a note or deed of trust secured by real property contains an optional acceleration clause, default does not start the limitations running on the note. *Id.* Instead, under these circumstances, a cause of action for foreclosure accrues only when the note holder actually exercises its option to accelerate. *Id.*; *see also Khan v. GBAK Prop., Inc.*, 371 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2012, no pet.). This requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Holy Cross Church*, 44 S.W.3d at 566; *see also Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.—Dallas 2008, no pet.). "Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to harsh consequences of acceleration and foreclosure," while notice of acceleration "cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable." *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982). Notice that the debt has been accelerated is ineffective unless preceded by proper notice of intent to accelerate. *Id.* Both notices must be clear and unequivocal. *Holy Cross Church*, 44 S.W.3d at 566.

**C. Analysis**

In their petition, the Hickeys alleged that the Bank's cause of action accrued in 2003/2004 when they first defaulted on the loan and the Bank hired lawyers to handle the foreclosure process. Under this theory, the Bank had four years from the date of default and accrual—until 2008 at the latest—in which to foreclose, and its attempt to do so in 2011, came too late. Accordingly, the Hickeys contend the Bank's 2011 action was time-barred and the resulting foreclosure was void. In its no-evidence motion for summary judgment, the Bank alleged there was no evidence that the Hickeys' note was accelerated in 2004, and, therefore, no evidence that the Bank's cause of action accrued in 2004. To defeat the Bank's no-evidence motion, the Hickeys were required to present evidence raising a genuine issue of material fact as to whether their note was in fact accelerated, and thus the Bank's cause of action accrued, in 2004. *See Holy Cross Church*, 44 S.W.3d at 566.

1. *Optional Acceleration Clause*

We first address the Hickeys' argument that their default triggered the acceleration of the entire debt and the start of the limitations period, disposing with the need for any other evidence of acceleration. In support of this argument, the Hickeys rely on older authority holding that a default could cause the accelerated maturity of the entire debt *if* the documents so provided. *See City Nat'l Bank of*

8

*Corpus Christi v. Pope*, 260 S.W. 903, 905 (Tex. Civ. App.—San Antonio 1924, no writ) ("[I]f the accelerated maturity of the whole debt had been independently provided for, without according an option to the holder, then the rule would be different, the default provided for would ipso facto mature the whole debt, and limitation would thereupon begin to run.") But, the Texas Supreme Court recently has held that where a note or deed of trust secured by real property contains an optional acceleration clause, a cause of action for foreclosure accrues, and the limitations period begins running, only when the note holder actually exercises its option to accelerate, not immediately upon default. *See Holy Cross Church*, 44 S.W.3d at 566.

Here, both the note and the deed of trust give the lender the *option* to accelerate the note upon default. Paragraph 14 of the note states that, upon default, the Bank, "at [its] option . . . may make all or any part of the amount owing by the terms of this Note immediately due." The deed of trust contains a similar provision: "Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of a default or anytime thereafter." These documents, by their plain terms, provide the Bank the *option* to accelerate the note upon default. Therefore, in order to have effectively exercised its option

9

to accelerate the note, the Bank was required to provide the Hickeys with notice of intent to accelerate and notice of acceleration. *Id.*

Yet the Hickeys point to the provision of the deed of trust that states: "[i]n the event of default, it will be the duty of the Trustee, at the request of Lender (which request is hereby conclusively presumed), to invoke the power of sale as required by Section 51.002 of the Texas Property Code." They contend this demonstrates the Bank had no option but to invoke the power of sale upon their default. But this ignores the provisions discussed above, as well as the preceding sentence of the deed of trust, which states that the Bank's right to accelerate and foreclose are "*subject to* any right to cure, required time schedules or any other notice rights [the Hickeys] may have under federal and state law." (Emphasis added). Texas law requires that both notice of intent to accelerate and notice of acceleration be given. *See Holy Cross Church*, 44 S.W.3d at 566. Having concluded that these two notices were required, we consider whether the Hickeys adduced some evidence that they received the required notice.

2.   *Did the Hickeys produce some evidence that the Bank provided notice of intent to accelerate?*

In support of their response to the Bank's motion for summary judgment, the Hickeys adduced evidence demonstrating that the Bank, in 2004, took certain steps toward foreclosure. This consisted of: (1) a January 12, 2004 notice of default letter from the Bank to the Hickeys informing them if they do not cure default, the

Bank "may require immediate payment in full . . . and may invoke the power of sale;" (2) two 2004 billing statements reflecting the Bank incurred legal fees in connection with its contemplated foreclosure action against the Hickeys; and (3) a February 23, 2004 letter from Rocap Witchger asking local counsel to "please move forward with a foreclosure against the Hickeys."

We conclude that this evidence did not raise a fact issue as to whether the Bank provided the Hickeys notice of its intent to accelerate. First, we note that neither the billing statements nor the letter from Rocap Witchger to local counsel were sent to the Hickeys and, therefore, cannot be evidence that the Bank provided *the Hickeys* notice of its intent to accelerate. In addition, although the Hickeys argue the January 12, 2004 letter from the Bank is sufficient, it merely stated that the Hickeys were in default and that if default was not cured within the specified period, the Bank, at its option, "may" accelerate the debt and invoke its power of sale. This is not evidence that the Bank intended to exercise the option to accelerate the note; rather, it is merely a restatement of the option conferred in the note and deed of trust. *See Ogden*, 640 S.W.2d at 233–34 (holding that letter containing warning that "failure to cure breach . . . *may* result in acceleration of the sums secured by the Deed of Trust and sale of the property," was insufficient to give notice to debtor that noteholder intended to exercise its option to accelerate debt because it "merely restated the option conferred in the deed of trust"); *see also*

11

*Mastin v. Mastin*, 70 S.W.3d 148, 155 (Tex. App.—San Antonio 2001, no pet.) (applying cases requiring unequivocal language regarding acceleration to debt arising in divorce decree and concluding that, where divorce decree gave wife option to accelerate remaining alimony amounts due upon default, prayer for relief in petition "that [wife] be granted acceleration if she so requests at the time of trial" did no more than repeat option in divorce decree and did not give unequivocal notice of intent to accelerate, rendering any attempted acceleration ineffective); *Sarasota, Inc. v. Ballew*, No. 03-00-00258-CV, 2001 WL 194031, at *3 (Tex. App.—Austin Feb. 28, 2001, pet. denied) (holding that letter from lender advising debtor that, unless loan was brought current, lender "intend[ed]" to exercise its right to foreclose on property may have indicated "movement toward acceleration and foreclosure, but it [was] neither unequivocal nor sufficient alone" to express intent to accelerate and affidavit from former officials at lender stating that lender "was going forward with the exercise of its legal rights" did not make letter unequivocal).

As noted, effective acceleration requires two things: (1) notice of intent to accelerate; and (2) notice of acceleration. *Holy Cross Church*, 44 S.W.3d at 566; *Burney*, 244 S.W.3d at 903. Even assuming that the Hickeys had produced evidence on the issue of the bank's notice of acceleration, any notice that the debt had been accelerated was ineffective because it was not preceded by proper notice

of intent to accelerate.  *See Ogden*, 640 S.W.2d at 234.  Therefore, we conclude that, because the Hickeys failed to produce evidence of notice of intent to accelerate, the Bank's cause of action did not accrue in 2004 and the trial court properly granted summary judgment in the Bank's favor.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Brown, and Huddle.