

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00383-CV

———————————————

D. PAUL PREVALLET, Appellant

V.

RENA JANE PREVALLET, Appellee

---

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-557296-14

---

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I. Introduction

After Appellant D. Paul Prevallet filed for divorce, Appellee Rena Jane Prevallet counter-petitioned for divorce and received an award of $1,150 a month in spousal support in the trial court's 2012 decree. *Prevallet v. Prevallet*, No. 02-12-00260-CV, 2014 WL 92793, at *1, *5 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op.). Paul was ordered to pay the spousal maintenance award "until the death of [Rena] or further order of this Court," and we affirmed the trial court's judgment. *Id.* at *1, *4.

Paul made monthly payments to Rena through June 2016 and then filed a "Motion to Modify/Terminate the Order for Spousal Maintenance." The trial court denied Paul's motion after a hearing, and in a single issue, Paul argues that the trial court erred by doing so and challenges the evidence to support the trial court's decision. We affirm.

### II. Discussion

Paul asks us to reverse the trial court's judgment and either enter a judgment granting his motion or remand the case to the trial court for further proceedings. Within his single issue, Paul makes the following arguments:

(1) The evidence at trial showed that he was ordered to pay more than the monthly maximum amount that a court can legally order—which, under Family Code Section 8.055, is the lesser of $5,000 or 20% of the obligor spouse's average

2

monthly gross income—and there is no evidence that his income is the $5,750 per month it would have to be for the trial court to reach the $1,150 monthly amount;

(2) The trial court erroneously applied the standard for enforcement of a maintenance order under Family Code Section 8.059 to his motion for modification, when Rena did not bring an enforcement action;

(3) The trial court's finding of fact and conclusion of law that Rena lacked sufficient property for her minimum reasonable needs is unsupported by the evidence;

(4) The trial court abused its discretion when the evidence at trial established a material and substantial change in circumstances that affected each spouse's ability to provide for their minimum reasonable needs independently; and

(5) The trial court did not mention in its findings and conclusions that the monies awarded to Paul in the divorce were assets and not income, referring specifically to the proceeds of the sale of the home that was awarded to Paul in the divorce.

## A. Spousal Maintenance

When spousal maintenance is awarded because the obligee spouse's ability to provide for his or her minimum reasonable needs is substantially or totally diminished because of a physical disability, as here, *see id.* at *1–2, *5, the court may order such maintenance "for as long as the spouse continues to satisfy the eligibility criteria prescribed by the applicable [statutory] provision." Tex. Fam. Code Ann. § 8.054(a)(2), (b). A court may not order maintenance that requires an obligor to pay

3

monthly more than the lesser of $5,000 or 20% of the spouse's average monthly gross income.  *Id.* § 8.055(a).

On either party's request, or sua sponte, the trial court may order a periodic review of its maintenance order, which is subject to modification under Section 8.057 "on a proper showing of a material and substantial change in circumstances, including circumstances reflected in the factors specified in Section 8.052, relating to either party."  *Id.* §§ 8.054(c), (d), 8.057(c).  Section 8.052 sets out eleven factors that are initially used to determine maintenance, including "each spouse's ability to provide for that spouse's minimum reasonable needs independently, considering that spouse's financial resources on dissolution of the marriage" and "the effect on each spouse's ability to provide for that spouse's minimum reasonable needs while providing . . . maintenance, if applicable."  *Id.* § 8.052.

Termination of the spousal-maintenance obligation, on the other hand, is based on either party's death or the obligee's remarriage or romantic cohabitation "in a permanent place of abode on a continuing basis."  *Id.* § 8.056(a)–(b).

## B.  Preservation of Error

On appeal, Paul discusses the law on modification and argues that the trial court erred by not modifying the spousal-maintenance order.  He also argues that he proved that there had been a material and substantial change in circumstances.

Rena responds that the trial court did not err by denying Paul's motion because Paul pleaded only for the termination of spousal maintenance and did not seek or

4

argue for merely a reduction of the amount that he owed. Therefore, she argues, Paul's modification argument should not be considered on appeal. She also refers us to the fact findings that Paul challenges, pointing out that Paul failed to request amended or additional findings.

We first address whether Paul waived his complaint about fact findings and then address whether Paul preserved his modification arguments.

Under Rule of Civil Procedure 298, after the trial court files original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings or conclusions. Tex. R. Civ. P. 298. Failure by a party to request additional amended findings or conclusions waives the party's right to complain on appeal about the lack of a finding.[1] *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *1 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.); *see Friend v. Friend*, No. 02-15-00166-CV, 2016 WL 7240596, at *3 (Tex. App.—Fort Worth Dec. 15, 2016, no pet.) (mem. op.) ("By failing to timely request additional findings and conclusions, Harlan waived the right to complain on appeal about the trial court's failure to make *additional* findings." (emphasis added)); *cf. Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex., Inc.*, 975 S.W.2d 546, 561 (Tex. 1998)

---

[1]Likewise, to the extent that Paul complains that the trial court did not make other findings, he waived the making of those findings by his failure to request findings on those issues.

(stating that the failure to request additional findings does not waive a complaint that the existing findings lack evidentiary support).

In its findings of fact and conclusions of law, the trial court made a finding that at the time of the trial, Rena "lacked property to provide for her minimum reasonable needs," *see* Tex. Fam. Code Ann. §§ 8.052(1), 8.057(c), and that as a result of Paul's non-payment of spousal maintenance to Rena since June 2016, Rena had to sell her home. It also found that Paul had had the ability to pay spousal maintenance from 2016 to the date of trial in 2019, *see id.* § 8.052(5), and concluded that Paul had had the ability to pay it in the amount of $1,150 per month. The trial court did not make a finding that a material and substantial change in circumstances had occurred. *Cf. id.* § 8.057(c). Paul argues that the trial court should have made such a finding based on the evidence presented at trial, which, he contends, established that he cannot pay the ordered spousal maintenance from his current income. Because he failed to request a finding on this issue, he has thereby waived this portion of his first issue.

With regard to whether Paul's modification arguments were preserved for our review, we look to the substance of a plaintiff's pleadings, not its form or title, to determine the nature of what the plaintiff sought. *See Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021); *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) ("We have stressed that 'courts should acknowledge the substance of the relief sought despite the formal styling of the pleading.'" (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam))); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex.

6

1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it."); *see also* Tex. R. Civ. P. 71 ("Misnomer of Pleading"). We may not reverse based on a complaint not raised in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). But "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tex. R. Civ. P. 67. To determine whether an issue was tried by consent, we must examine the record for evidence of trial of the issue. *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.).

### 1. Trial Record

In his June 23, 2016 "Motion to Modify/Terminate the Order for Spousal Maintenance," Paul cited as "Reason for Termination of Order" the facts that he had become unemployed, unemployable, and disabled and that his employment field had dramatically changed, making it impossible for him to obtain a position at his previous pay level. He also asserted that Rena had more than adequate resources of her own and that her resources exceeded his. Paul prayed for the spousal maintenance to be terminated, for his attorney's fees, expenses, costs, and interest, and "for general relief."

Almost two years later, on May 17, 2018, the trial court set the matter for trial on March 28, 2019. The trial court's trial-setting notice indicated that the case's contested issues were "Spousal Support/Maintenance" and "Other (specify)," with

7

"Modification" written in by the trial judge. The title of the March 28, 2019 trial record is "Modification to Cancel Spousal Maintenance," paralleling the question asked by the trial judge at the start of the hearing, "[T]his is a modification to terminate the spousal maintenance; is that correct?" Paul's attorney replied, "Yes, Your Honor." Rena's attorney said nothing.

Paul and Rena each testified about their respective incomes and expenses, and the trial court admitted into evidence Paul's income tax returns from 2011 to 2018 as well as the August 14, 2017 Social Security notice of decision finding him under a disability that made him "unable to perform any past relevant work" since April 27, 2016.

Paul put on evidence that he received $33,900 per year in social security disability benefits and otherwise supported his lifestyle through his wife and his parents. His parents, for example, allowed Paul and his wife to live rent-free in a house owned by his father, and they paid for Paul's $200 monthly country club membership dues. The trial court also admitted into evidence Paul's bank statements from July 9, 2016 to July 10, 2017, which showed that the combined balance of his checking and money market savings account never dropped below $100,000 from July 2016 to July 2017.[2]

---

[2]In July 2016, $100,000 of the amount in the account came from sales proceeds of the Texas house that Paul was awarded in the divorce.

Paul offered no evidence of how much he could afford to pay as a modification.[3]  Rather, his theory of the case and evidence supporting that theory was that because he was on disability, an exclusion from "gross income" under the spousal maintenance statutes,[4] and because Rena had sufficient funds of her own to meet her minimum reasonable needs, the obligation should be altogether terminated.  During the trial, Paul's attorney argued, "He has what he has from his disability and if his parents have given him a gift in the past, then there is an argument [Rena] can make, but that doesn't mean he will ever have that money in the future.  We're asking that you terminate as of that [disability] date."  When asked, "[A]re you able to pay Rena $1,150 a month," Paul replied, "No, I'm not."  Paul offered no evidence related to his ability to pay a lesser amount.

---

[3]Rena states in her brief that Paul never produced his 2018 bank statements despite the trial court's orders on her motions to compel discovery.  Rena further argues that Paul had an ongoing duty to supplement discovery under Rule of Civil Procedure 193.5 but that "[h]e simply chose not to, and now, comes to this Court to complain about the ruling the Court correctly made given the evidence it was presented."

[4]Family Code Section 8.055 defines "gross income," for purposes of a spousal-maintenance calculation, as including 100% of all wage and salary income and other compensation for personal services (including commissions, overtime pay, tips, and bonuses); interest, dividends, and royalty income; self-employment income; net rental income; and "all other income actually being received, including severance pay, retirement benefits, pensions, trust income, annuities, capital gains, unemployment benefits, interest income from notes regardless of the source, gifts and prizes, maintenance, and alimony." Tex. Fam. Code Ann. § 8.055(a-1)(1)(A)–(E).  It defines "gross income" to exclude, among other things, social security benefits and disability benefits. *Id.* § 8.055(a-1)(2)(G).

Rena likewise did not put on any evidence that Paul could afford to pay something less than $1,150 a month. Her theory of the case and the evidence she presented showed that Paul still had "gross income" under the spousal maintenance statutes—notwithstanding his disability payments—because of gifts from his parents and that there should accordingly be no termination of the obligation.

Neither party put on evidence or argued that Paul could afford to pay something more than zero but less than he was currently obligated to pay.

During closing arguments, Paul's attorney argued, "Judge, 8.055 allows for a modification"[5] and "I have a material and substantial change which is in keeping with 8.055 under the modification rules," but she also asked for the trial court to "terminate the spousal completely." The attorney clarified that Paul was seeking termination, not reduction of the obligation when she confirmed that he had not made a payment after June 2016 and asked the court "to absolve him of that obligation because he didn't have the ability to pay from that date in 2016 through today and spanning from today forward."

---

[5]Family Code Section 8.055 merely sets out the limit on how much a trial court can award in maintenance (the lesser of $5,000 or 20% of the obligor's average monthly gross income) and defines what counts as "gross income." Tex. Fam. Code Ann. § 8.055. Section 8.057, on the other hand, addresses how to modify a maintenance order, i.e., through "a proper showing of a material and substantial change in circumstances," and provides that the modification will only apply to payment accruing after the filing of the motion to modify. *Id.* § 8.057(c).

Rena's attorney then argued, "As far as the obligation to modify the spousal maintenance, the statute clearly provides that 8.057 that that's his right. If . . . something changes, then it's up to him to bring it to the Court." Rena's attorney further argued, "Now, if he's attempting to get the Court to modify, he's asking for zero; that he pay nothing," and he argued that Paul had sufficient income to pay the spousal maintenance award based on gifts and the income from his pension and retirement. The trial court took the parties' evidence and arguments under advisement.

The trial court ruled on June 28, 2019, and a month later, Paul filed a motion to clarify or reconsider. In the motion, Paul argued that he had submitted evidence of his total disability and inability to pay spousal maintenance and that Rena had offered no evidence that she could not provide for her reasonable minimum needs or that Paul had the funds to pay, or would have the funds to pay, spousal maintenance to her.

Rena then brought a "Motion to Sign and Enter Order Denying Modification of Spousal Support." The trial court's September 16, 2019 order, entitled "Order Denying Modification of Spousal Support," stated, "It is Therefore Adjudged and Decreed that Movant D. PAUL PREVALLET's request to Modify/Terminate the Order for Spousal Maintenance as Ordered in the Final Divorce of May 8, 2012 is denied."

Rena drafted the findings of fact and conclusions of law that the trial court adopted. As pertinent to the preservation issue, the trial court adopted the following findings:

> 6.      On June 23, 2016, [Paul] filed his Motion to Terminate the permanent spousal maintenance to [Rena].
>
> 7.      The only affirmative relief requested in the motion of [Paul] was termination of spousal maintenance.
>
> 8.      [Paul] did not plead in the alternative for a reduction in the amount of spousal maintenance.

The trial court also adopted the following conclusions:

> 1.      On June 23, 2016 [Paul] filed a motion to Modify/Terminate the Order for Spousal Maintenance.
>
> 2.      The only affirmative relief requested in the motion . . . was termination of spousal maintenance.
>
> 3.      [Paul] did not plead in the alternative for a reduction in the amount of spousal maintenance.
>
> . . . .
>
> 12.     Order Denying Termination of Spousal Support paid by [Paul] to [Rena] in the amount of $1,150.00 per month [was] signed September 16,[]2019.

**2. Application**

Under the circumstances presented by the record in this case, Paul failed to raise modification in his pleadings and sought only to terminate his future spousal maintenance obligation. The evidence at trial showed that he and Rena were both alive and did not show that Rena had remarried or entered into romantic cohabitation,

12

the statutory bases for *terminating* an obligation to pay future spousal maintenance. *See* Tex. Fam. Code Ann. § 8.056(a)–(b). Paul's "modification" theory was only that he lacked income to pay $1,150; he did not testify or otherwise show that he could have paid less than $1,150 but more than zero, which might have supported modification.[6] Accordingly Paul has failed to preserve his modification arguments for our review, and we overrule this portion of his sole issue.

## C. Paul's Remaining Arguments

In one of Paul's remaining arguments, he complains that the trial court's finding that Rena lacked sufficient property for her minimum reasonable needs is unsupported by the evidence.

We review a trial court's spousal maintenance order for an abuse of discretion. *See Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort Worth 2008, pet. denied); *see also Mathis v. Mathis*, No. 12-17-00049-CV, 2018 WL 1324777, at *3 (Tex. App.—Tyler Mar. 15, 2018, no pet.) (mem. op.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). But no abuse of discretion occurs when the trial court decides based on conflicting evidence, so long as some substantive and probative evidence supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d

---

[6]Absent any testimony that Paul could pay something less than $1,150 per month, modification was not tried by consent.

92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

Rena testified that after the divorce she bought a new house for $154,335 but that when she stopped receiving Paul's spousal support, she had to sell the house and move into an apartment.[7] The apartment in which she lived, for which she paid $711 per month in rent, was "income-based," and she said that her 1,600-square-foot house had been "[m]uch nicer" than her one-bedroom, 700-square-foot apartment. Rena had to "get rid of everything [she] had to live in a one-bedroom apartment" because she did not have room to store everything. At the time of the hearing, Rena was receiving around $2,800 per month from various sources.[8] She said that her monthly living expenses had been about the same amount as her income. Rena also testified that at the time of the hearing, she did not have a boyfriend and that when she had one in 2016, he did not live with her. *Cf.* Tex. Fam. Code Ann. § 8.056(b) (providing

---

[7]Rena had borrowed $130,211.60 to purchase the house. When she sold the house, she received $144,202.42 cash after the house sold for $205,000.

[8]Paul testified that Rena had been receiving social security disability at the time of the divorce in 2012 and that she had been awarded one of his 401(k)s and half of his Deloitte pension in the divorce as well as retiring with her own pension and a pension from a previous ex-husband. Rena testified that the 401(k) she received in the divorce fluctuated between $96,000 and $103,000, and that she was taking monthly distributions from it. She also took three lump sum distributions from the CSC pension, in addition to a monthly pension payment of $256.77. Rena received $1,729 per month in social security disability, as well as a monthly payment of $170.21 from a MetLife long term disability policy that she had been awarded in the divorce. She received $135.17 per month from her Lockheed pension, and she received an IRA withdrawal of $552.50 a month.

14

for termination of spousal maintenance "if the court finds that the obligee cohabits with another person with whom the obligee has a dating or romantic relationship in a permanent place of abode on a continuing basis"). Based on this evidence, the trial court had sufficient evidence to conclude that Rena lacked property to provide for her minimum reasonable needs, and we overrule this portion of Paul's sole issue.

Paul also complains that the evidence at trial showed that he was ordered to pay more than the maximum amount that a court can legally order, and there is no evidence that his income is $5,750 per month to reach the $1,150 monthly amount, as required by Family Code Section 8.055, which states that a court may not order maintenance that requires an obligor to pay monthly more than the lesser of $5,000 or 20% of the spouse's average monthly gross income. Notwithstanding the fact that Paul's $33,900 in annual social security disability benefits was expressly excluded from the calculation of gross income under Section 8.055, *see id.* § 8.055(a-1)(2)(G), Paul did not present evidence of his income—or his lack of income—from gifts, retirement benefits, pensions, or capital gains, although he acknowledged having received gifts from his parents. *Cf. id.* § 8.055(a-1)(1)(E). Paul had the burden to put on evidence that he had no other income besides disability in order to support his motion, but he failed to do so. Accordingly, we cannot say that the trial court abused its discretion by concluding that Paul's income was sufficient to permit the ordering of spousal maintenance in the monthly amount of $1,150, and we overrule this portion of his sole issue.

Finally, Paul argues, with regard to the trial court's Fact Findings 25, 26, and 27,[9] that the trial court incorrectly applied the standard of review for an enforcement action under Family Code Section 8.059 even though Rena did not bring an enforcement action. These findings pertain to an affirmative defense to contempt allegations under Section 8.059, and Paul is correct that Rena did not bring a contempt action against him. We conclude, however, that based on the record, Fact Findings 25, 26, and 27 were irrelevant to the trial court's decision to deny the requested termination when there was no evidence to support termination under Section 8.056 and modification was neither raised nor tried by consent. *See Cooke Cty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g) ("[A]n immaterial finding of fact is harmless and not grounds for reversal."). Accordingly, we overrule the remainder of Paul's sole issue.

---

[9]In Findings 25, 26, and 27, the trial court found that there was no evidence that Paul lacked the ability to provide spousal maintenance in the amount of $1,150 each month until the date of trial; that there was no evidence that Paul lacked property that could be sold, mortgaged, or otherwise pledged to raise funds needed to pay the ordered maintenance of $1,150; and that there was no evidence that Paul did not know of a source from which the money could have been borrowed or otherwise legally obtained to pay the court-ordered maintenance.

### III. Conclusion

Having overruled Paul's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: April 8, 2021