

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00037-CV

_____

IN RE THE ESTATE OF JANE R. CURTIS, DECEASED

On Appeal from the County Court at Law
Lamar County, Texas
Trial Court No. P-17320

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

OPINION

This breach of contract case stems from two promissory notes executed by Robert Jaeckle, individually and as President of Reunion Ranch, Inc. (Reunion Ranch)[1] payable to Jane R. Curtis. One note in the amount of $20,000.00 was executed on February 1, 1999. The parties were not sure when the second promissory note in the amount of $35,000.00 was executed. When Curtis died in June 2012, the notes remained unpaid, and her Estate sued to recover the debts. After a bench trial, the trial court found in favor of the Estate as to the $20,000.00 note, but found in favor of Jaeckle and Reunion Ranch as to the $35,000.00 note. The trial court entered judgment against Jaeckle and Reunion Ranch, jointly and severally, in the sum of $43,828.10, representing principal and interest owing on the $20,000.00 note. Jaeckle and Reunion Ranch[2] appeal, claiming the trial court's judgment should be reversed. The Estate cross-appeals, claiming the trial court erred in not entering judgment in its favor for recovery on the $35,000.00 note.

We affirm the trial court's judgment as to the $20,000.00 note, but reverse the judgment as to the $35,000 note and render judgment that the Estate recover on the $35,000.00 note. We remand to the trial court for a determination of the amount Jaeckle owes on the $35,000.00 note.

---

[1]Reunion Ranch owns a ranch, located in Kaufman County, which serves as a venue for family reunions and group meetings. In this opinion, "Reunion Ranch" refers to the corporation, and "the ranch" refers to the real property in Kaufman County owned by the corporation.

[2]We refer to the appellants, collectively, as Jaeckle.

## I.     Factual and Procedural Background

At the time of her death in 2012, Curtis had known Jaeckle for approximately thirty-three years.  Before Curtis and her husband divorced, Jaeckle and Mr. Curtis partnered in various business ventures.  After the divorce, Jaeckle assisted Curtis with her business affairs from time to time.  At one point, Jaeckle and Curtis shared a joint bank account, and Curtis periodically lent money to Jaeckle, including the two loans at issue in this case.

### A.     The $20,000.00 Loan

On February 1, 1999, Jaeckle executed a note payable to Curtis in the amount of $19,377.00.[3]  The $20,000.00 note provided for semi-annual payments of $867.28, which included interest, on the first day of each February and August, with the balance due in full on February 1, 2001.  The Estate contends that Jaeckle never repaid this $20,000.00 note.  Jaeckle asserts that this $20,000.00 debt was paid, although his testimony about how this note was paid was somewhat complicated, at best.

Apparently, in 1992, Curtis and Jaeckle bought property, jointly, on Saturn Street in Dallas (Saturn Property), and Jaeckle agreed to contribute $35,000.00 to the purchase funds.  Although the record is not entirely clear, it appears that Curtis paid the entire purchase price at closing, and Jaeckle agreed to reimburse Curtis $35,000.00, which represented Jaeckle's share of the purchase price. Jaeckle claims that he made payments on this $35,000.00 debt to Curtis, eventually reducing

---

[3]This note purportedly documents the $20,000.00 debt on which Curtis sued Jaeckle.  At trial, the Estate's attorney indicated that although the testimony references a $20,000.00 note, they were simply "rounding up the number."  For purposes of consistency and ease of reference, we will also refer to this note as the $20,000.00 note.

3

it to $19,377.00 by February 1999, when he and Curtis subsequently sold the Saturn Property to Kenneth Kozlovsky.

It also appears that the Saturn Property was titled to both Curtis and Jaeckle, but no record existed of Jaeckle's debt to Curtis for his portion of the original purchase price. According to Jaeckle, the title company required him to make a promissory note to Curtis to memorialize that debt in writing before the sale to Kozlovsky was closed. It further appears that Jaeckle and Curtis entered into a seller financing arrangement with Kozlovsky to finance his purchase of the Saturn Property. Accordingly, for the next twenty months, Kozlovsky made payments to Jaeckle and Curtis. According to Jaeckle, Kozlovsky made a final payment on his purchase of the Saturn Property in the amount of $19,903.00 on October 2, 2000. However, Jaeckle testified that the check was made payable to Curtis only and that, as a result, it not only satisfied Kozlovsky's debt to Curtis and Jaeckle, it also satisfied Jaeckle's debt to Curtis that was memorialized by the February 1, 1999, $20,000.00 note.[4] Thus, according to Jaeckle, the February 1, 1999, $20,000.00 note was paid off in 2000.[5]

---

[4]Presumably, Jaeckle owed only a portion of the $20,000.00 note by the time of Kozlovsky's final payment so that his final check to Curtis satisfied both what Jaeckle owed to Curtis and what Kozlovsky owed to both of them.

[5]Jaeckle testified that after the February 1, 1999, $20,000.00 note was paid, Curtis "gave" him another $20,000.00 to help him because he was struggling financially, having just undergone a divorce. Although Jaeckle did not sign a note to Curtis for this second $20,000.00 "gift," he intended to repay it, but Curtis insisted that he did not have to. Jaeckle claimed that Curtis ultimately told him that if he intended to repay her, to "do it in a hurry" and that they eventually agreed that the $20,000.00 would be repaid when the ranch was sold. On numerous occasions thereafter, Jaeckle told Curtis and Brad Aldridge—the executor of Curtis' estate—he intended to repay Curtis the $20,000.00 when he sold the ranch and that this would be the first debt paid out of the sale proceeds. Jaeckle agreed that Curtis should have been able to rely on this promise. Nevertheless, the ranch was never sold. It appears that Jaeckle claims that this $20,000.00 gift was the subject of Curtis' letter to him, not the February 1, 1999, $20,000.00 note. *See infra* note 14.

4

## B.     The $35,000.00 Note[6]

Jaeckle denied owing the $35,000.00 note as well.  He admitted that he had signed a $35,000.00 note in favor of Curtis in the past, but claimed that it had been repaid.  In fact, Jaeckle executed two $35,000.00 notes in favor of Curtis in June 1993 and June 1994, respectively.  Jaeckle testified that "this note"[7] was repaid in the form of 4,000 shares of Gateway Bank stock, estimated to be worth $8.00 per share.   Aldridge conceded that he was unable to locate a written memorialization of an unpaid $35,000.00 note among Curtis' records and indicated that he does not know the date of its origination.  Check stubs from Reunion Ranch dated January 1999 through May 2001, though, indicate that Reunion Ranch made monthly interest payments to Curtis on this debt in varying amounts of $241.10, $233.33, and $217.84.

## C.     Evidence Pertaining to Both Notes

In April 2002, Curtis received a letter from Jaeckle's secretary, Nancy Steel Lewerenz.  In this letter, Lewerenz stated the amounts owed on each note and attached two amortization schedules for the repayment of both notes.  The amortization schedule for the $20,000.00 note stated that the Ranch owed two payments of $867.27 and identified the principal and interest payments due on the note through August 1, 2005.  Although Jaeckle alleged that he owed nothing on a $20,000.00 note to Curtis, four Reunion Ranch check stubs were introduced into evidence

---

[6]Throughout this opinion and in the trial court below, this debt is alternatively referred to as a "debt," "loan," "obligation," and "note."  Yet, a note is merely evidence of the existence of a debt, not the debt itself.  *Bradford v. McElroy*, 746 S.W.2d 294, 298 n.3 (Tex. App.—Austin 1988, no writ).  Thus, the terms reference the same thing:  the $35,000.00 debt, loan or obligation which is evidenced by the note.

[7]Jaeckle does not specify which $35,000.00 note was repaid.  It appears, however, that the June 1994 note may have actually renewed the debt of the June 1993 note, which was due on June 1, 1994.

reflecting semi-annual payment of principal and interest in the amount of $867.28 each for February 1999, February 2000, August 2000, and February 2001. These payments mirrored the payment obligations of the $19,277.00 note and were consistent with the Lewerenz amortization schedule, which indicated that semi-annual payments "of $867.28[,] which includes both principal and interest[,]" were due on February 1 and August 1. Jaeckle could not explain why he continued to make payments on this note after it was purportedly paid off in 2000.

The amortization schedule for the $35,000.00 note indicated that a principal balance of $35,000.00 remained outstanding. It further indicated that Jaeckle paid interest on this note through July 31, 2001. Finally, the schedule listed monthly interest payments due from August 31, 2001 through July 31, 2002, although it did not indicate what payments were due on the principal balance. Payments made by Reunion Ranch from January 1999 through May 2001 mirrored the amounts listed in this amortization schedule.

On May 23, 2011, Aldridge sent Jaeckle a letter with an amortization schedule attached for both the $20,000.00 note and the $35,000.00 note. On June 17, 2011, Curtis sent Jaeckle a letter stating that he owed her money and specifically referring to the spread sheets Aldridge sent. In response, Jaeckle sent Curtis a letter in July 2011 stating, among other things, that he would repay Curtis on the sale of Reunion Ranch. Jaeckle also had conversations with Aldridge about how he intended to pay the two notes. In these conversations, Jaeckle neither denied that he owed the the two notes nor claimed that he received any portion of the funds as a gift. Instead, he told Aldridge that he was still attempting to sell the ranch, that the debt to Curtis was the largest debt he owed, and that he hoped the ranch would sell so that he could "get that resolved."

6

## II. Points of Error on Appeal

Jaeckle and Reunion Ranch filed a joint brief on appeal claiming (1) that the Estate's claims were barred by the statute of limitations and, as a matter of law, were not revived by acknowledgment; (2) that the Estate failed to plead modification, breach of fiduciary duty, and estoppel, and that the trial court erred in considering these defensive theories; (3) that the evidence is legally insufficient to uphold the trial court's ruling that Jaeckle and Reunion Ranch owe the Estate any balance on the $20.000.00 note; and (4) that the trial court committed reversible error in admitting testimony and documents in violation of the "Dead Man's Rule."

The Estate filed a cross-appeal claiming (1) that the $35,000.00 note was revived less than four years before filing suit and that the trial court erred in failing to reach that conclusion, (2) that Jaeckle and Reunion Ranch were estopped from relying on the statute of limitations to defeat the breach of contract claim on the $35,000.00 note and that the trial court erred in failing to reach that conclusion, and (3) that the $35,000.00 note was modified to be due and payable when Reunion Ranch was sold and that the trial court erred in failing to reach that conclusion. In addition to disputing these points of error, the Estate claims that because Reunion Ranch did not timely file a notice of appeal, it is not a proper party to this appeal.

Jaeckle and Reunion Ranch filed a joint reply brief to the Estate's brief on cross-appeal in which they contend (1) that the evidence is legally and factually insufficient to support a finding that the $35,000.00 note was revived by acknowledgement less than four years before suit was filed, (2) that the evidence was legally and factually insufficient to prove an enforceable

7

modification of the $35,000.00 note, and (3) that they were not estopped from relying on the statute of limitations as a defense to the breach of contract claim on the $35,000.00 note.

## III.     Parties to this Appeal

We must initially decide whether Reunion Ranch is a proper party to this appeal. Jaeckle timely filed a notice of appeal on April 28, 2014. The original notice does not list Reunion Ranch as an appellant, but the signature line on the notice identifies Edward Ellis as "Attorney for Defendant Robert J. Jaeckle & Reunion Ranch, Inc." On August 12, 2014, a first amended joint notice of appeal was filed, naming both Jaeckle and Reunion Ranch as appellants and stating that "Robert J. Jaeckle timely filed the Notice of Appeal on April 28, 2014[,] so that this court has jurisdiction over all the parties to the trial court's judgment." Thereafter, the Estate filed a motion to strike the amended notice of appeal and asked that this Court dismiss the appeal of Reunion Ranch.

Under the heading "Who Must File Notice," Rule 25.1(c) of the Texas Rules of Appellate Procedure states,

> A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. Parties whose interests are aligned may file a joint notice of appeal. The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.

TEX. R. APP. P. 25.1(c). Further, pursuant to the Rules, the notice of appeal must "state the name of each party filing the notice." TEX. R. APP. P. 25.1(d)(5). "The factor which determines whether jurisdiction has been conferred on the appellate court is not the form or substance [of the instrument relied upon by the Appellant to establish his intent to perfect appeal] but whether the instrument 'was filed in a bona fide attempt to invoke appellate court jurisdiction.'" *Walker v. Blue Water*

8

*Garden Apartments*, 776 S.W.2d 578, 581 (Tex. 1989) (quoting *United Ass'n of Journeymen & Apprentices v. Borden*, 328 S.W.2d 739, 741 (Tex. 1959)). If a party's notice of appeal is not timely filed, we cannot exercise jurisdiction over the party's attempted appeal. *Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied) (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001)).

Reunion Ranch seeks to alter the trial court's judgment. It was therefore required, under Rule 25.1(c) of the Texas Rules of Appellate Procedure, to file a notice of appeal. Reunion Ranch contends that because Ellis timely filed the notice of appeal as counsel for both Jaeckle and Reunion Ranch, the notice of appeal represents a good faith effort to invoke this Court's jurisdiction on behalf of Reunion Ranch. Reunion Ranch further contends that its position as an appellant was ultimately secured when it filed the amended joint notice of appeal in reliance on Rule 25.1 of the Texas Rules of Appellate Procedure, which allows an appellant to file an amended notice of appeal to correct a defect or omission in an earlier filed notice.[8]

In *Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Insurance Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 838–39 (Tex. 2008) (per curiam), on which Reunion

---

[8]This Rule provides,

> An amended notice of appeal correcting a defect or omission in an earlier filed notice may be filed in the appellate court at any time before the appellant's brief is filed. The amended notice is subject to being struck for cause on the motion of any party affected by the amended notice. After the appellant's brief is filed, the notice may be amended only on leave of the appellate court and on such terms as the court may prescribe.

TEX. R. APP. P. 25.1(g).

9

Ranch relies, an insurance carrier asserting subrogation rights against an alleged tortfeasor filed a notice of appeal in the name of its insured even though its insured apparently did not desire to appeal. The court of appeals dismissed the appeal because the carrier failed to name itself as the appellant in the notice of appeal. *Id.* at 839. On further appeal to the Texas Supreme Court, the issue was framed as "whether an insurer, asserting rights to subrogation, waived its right to appeal by filing the notice of appeal in its insured's name." *Id.* at 838. The high court held that "the notice of appeal in the insured's name was a bona fide attempt to invoke the appellate court's jurisdiction" and reversed the court of appeals' decision. *Id.* Although the notice of appeal in *Warwick* did not mention the insurer by name, a docketing statement filed on the same day as the notice identified the appellant as "'Warwick Towers Council of Co-Owners by and through St. Paul Fire & Marine Insurance Company.' All other appellate documents were also styled in this manner." *Id.* at 839. Accordingly, the Supreme Court held that the court of appeals erred by refusing to allow the carrier to amend its notice of appeal. *Id.* at 840; *see Foster v. Williams*, 74 S.W.3d 200, 203 (Tex. App.—Texarkana 2002, pet. denied) (holding that filing of docketing statement constitutes bona fide attempt to perfect appeal).

This case, however, is different from *Warwick* in two respects. First, in *Warwick*, the docketing statement demonstrated an intention by the insurer to be a party to the appeal from the day the original notice was filed. In this case, the docketing statement does not mention Reunion Ranch. The statement is styled "*Robert J. Jaeckle, Appellant v. Brad Aldridge, As Executor Of The Estate Of Jane R. Curtis, Appellee*" and states that the "Appellant is Robert J. Jaeckle." The only other party identified in the docketing statement is Aldridge. As in the notice of appeal, Ellis

10

signed the docketing statement as "Attorney for Defendant Robert J. Jaeckle & Reunion Ranch, Inc."[9] Second, in *Warwick*, because the insurer was the subrogee of Warwick, the insurer's interest was derivative of Warwicks, and the interests of the two entities were legally united and joined. *See Bahar v. Baumann*, No. 03-09-00691-CV, 2011 WL 4424294, at *3 (Tex. App.—Austin Sept. 23, 2011, pet. denied) (mem. op.) (citing *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007) (subrogee stands in shoes of subrogor)). Here, the appeal was filed by an individual. Reunion Ranch is a separate corporate entity. While their interests may be aligned, they are not "legally united and joined," as in *Warwick*.

Reunion Ranch also relies on *City of Houston v. Little Nell Apartments, L.P.*, 424 S.W.3d 640, 644 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). In that case, Little Nell Apartments sued both the City and Daniel Krueger, a city official, in his official capacity. Both defendants jointly filed a plea to the jurisdiction in the trial court, which was orally granted in part and denied in part. The City immediately filed a notice of appeal. After the trial court entered its written order, the City filed an amended notice of appeal "to provide the written order." *Id*. Neither of the City's notices named Krueger as an appellant. The City and Krueger filed a second amended notice of appeal over two months later. The appellee argued that the court lacked jurisdiction to hear Krueger's appeal because he was not included as an appealing party on either of the previously filed notices of appeal. The Houston Court disagreed, stating,

> The rule contemplates that there might be a defect or that information might be omitted, and specifically authorizes a party to file an amendment "to correct [ ] a

---

[9]None of the appellate documents filed by Jaeckle before the amended joint notice of appeal identify anyone other than Jaeckle as the appellant. These documents include the designation of matters to be included in the clerk's record, the appellant's letter requesting preparation of the reporter's record, the check paying appellant's supersedeas bond, and a motion seeking an extension of the appellant's briefing deadline.

11

defect or omission in an earlier filed notice." *Id*. 25.1(g). When a notice of appeal fails to "state that the party desires to appeal" and to "state the name of each party filing the notice," it is defective. *Kim v. Scarborough*, No. 14-04-00262-CV, 2004 WL 1574598, at *1 (Tex. App.—Houston [14th Dist.] July 15, 2004, no pet.) (mem. op.) (per curiam) (citing TEX. R. APP. P. 25.1(d)(3), (5)).

*Id*. The court also cited the "consistent policy" of the Texas Supreme Court "to apply rules of procedure liberally to reach the merits of the appeal whenever possible." *Id*. (quoting *Warwick*, 244 S.W.3d at 839).

The Houston First Court of Appeals took a contrary position in *Crofton v. Amoco Chemical Co.*, No. 01-01-00526-CV, 2003 WL 21297588, at *3 (Tex. App.—Houston [1st Dist.] May 20, 2003, pet. denied) (mem. op.). In that case, Wilson, one of the plaintiffs in the trial court and a party to the trial court's no-evidence summary judgment being appealed,[10] was omitted from the original, timely filed notice of appeal. Wilson's name was also omitted from the first amended notice of appeal, filed eight days after the original notice. Approximately four months later, appellants filed a second amended notice of appeal seeking to add Wilson as an appellant. In response, appellees filed a motion to strike. The court did not consider the omission of Wilson's name a "'clerical defect' susceptible to correction by amendment. Rather, appellants' second amended notice of appeal was, in effect, Coy Wilson's first notice of appeal from the trial court's judgment." *Id*. (citing TEX. R. APP. P. 25.1(f)). As a result, Wilson's appeal was deemed untimely and dismissed. *Id. Little Nell Apartments* distinguished *Crofton* by stating that "the court failed

_____

[10]Wilson was one of many plaintiffs alleging personal injuries and property damages resulting from the release of toxic chemicals from the defendant's property. *Crofton*, 2003 WL 21297588, at *1.

to address whether there was a bona fide attempt to invoke appellate jurisdiction." *Little Nell Apartments*, 424 S.W.3d at 645.

Indeed, the correct analysis is whether Reunion Ranch made a bona fide attempt to invoke appellate jurisdiction. Here, we simply have an addendum below the attorney's signature on the notice of appeal indicating the attorney's representation of Jaeckle and Reunion Ranch. *Warwick* can be distinguished, as previously discussed. We further decline to rely on *Little Nell Apartments* to find that, in this case, a separate legal entity's right of appeal was preserved merely by an informational tag following counsel's signature on the notice of appeal. Reunion Ranch's first notice of appeal, filed on August 12, 2014, was untimely.[11] Consequently, we lack jurisdiction over Reunion Ranch's appeal and, therefore, dismiss the appeal as it pertains to Reunion Ranch.[12]

## IV. Analysis of Jaeckle's Appeal

### A. Revival of the $20,000.00 Obligation

Jaeckle initially complains that the trial court erroneously concluded "Jaeckle's handwritten letter . . . coupled with his statements during his sworn deposition and sworn trial testimony . . . revived the original [$20,000.00] obligation and that it remains due and owing."[13] We conduct

---

[11]*See also Nocula v. U.G.S. Corp.*, 520 F.3d 719, 723 (7th Cir. 2000) (holding that notice of appeal by sole shareholder of corporation in his individual capacity did not perfect appeal as to corporation under Rule 3(c)(1) of the Federal Rules of Appellate Procedure where "notice listed [shareholder] and [corporation] in the caption but did not specifically mention [corporation] in the body of the notice").

[12]In doing so, we grant the Estate's motion requesting that we strike the amended notice of appeal filed on behalf of Jaeckle and Reunion Ranch.

[13]Jaeckle does not contest the trial court's conclusion that he, on behalf of Reunion Ranch, entered into a valid loan agreement with Curtis, as documented by the loan agreement admitted into evidence as Estate's Exhibit 1. Jaeckle, likewise, does not contest the trial court's conclusion that the statute of limitations ran on the $20,000.00 note on February 1, 2005.

13

a de novo review of the trial court's conclusions of law. *Bendalin v. Youngblood & Assos.*, 381 S.W.3d 719, 735 (Tex. App.—Texarkana 2012, no pet.); *Bright & Co. v. Holbein Family Mineral Trust*, 995 S.W.2d 742, 745 (Tex. App.—San Antonio 1999, pet. denied) (whether written instrument sufficiently acknowledges a debt is question of law).[14]

Although a debt is barred by limitations, limitations can be avoided if the party to be charged acknowledges the debt in writing. Section 16.065 of the Texas Civil Practice and Remedies Code provides,

> An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.065 (West 2015). An acknowledgement of a debt under this statute creates a new obligation. *Stine v. Stewart*, 80 S.W.3d 586, 591 (Tex. 2002). According to the Supreme Court, "Texas Courts have consistently interpreted this statute to require that an agreement: 1) be in writing and signed by the party to be charged; 2) contain an unequivocal acknowledgment of the justness or the existence of the particular obligation; and 3) refer to the obligation and express a willingness to honor that obligation." *Id*. The amount of the obligation described in the acknowledgment must be "'susceptible of ready ascertainment.'" *Id*. (quoting *Stefek v. Helvey*, 601 S.W.2d 168, 171 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.)). "If an agreement meets these acknowledgment requirements, a party may sue for breach of that

---

[14]While Jaeckle states in his brief that "this Court must review the record for no evidence to support the findings of fact," he does not dispute or attack any of the trial court's factual findings with respect to the $20,000.00 obligation. Rather, he actually disputes the trial court's conclusion of law that the original obligation was revised. Thus, this point is reviewed under the de novo standard applicable to conclusions of law and not the "no evidence" standard applicable to findings of fact.

agreement." *Id.* (citing *Siegel v. McGavock Drilling Co.*, 530 S.W.2d 894, 896 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.).

The Estate argues that a handwritten letter by Jaeckle to Curtis constitutes written acknowledgement of the two loans in question. Jaeckle's handwritten letter to Curtis reads,[15]

> Dear Jane,
>
> Thank you for your letter and please thank Brad for the spread sheets (I don't have them any longer as Teresa and her lawyer took them).
>
> It's extremely embarrassing to get a letter like yours and even more embarrassing to know what an emotional price you paid to have to write it.
>
> I agree that you have always been a <u>wonderful</u> friend. It helped me more than you realize to talk to you when I was going through my divorce.
>
> I've also tried to be a good friend to you. We both went thru a lot with your divorce, successful investments we made like the Saturn loan, Bank stock, finalizing your 1st annuity or what to do about a house.
>
> I enjoyed our investment planning sessions—the trusts for your grandchildren and periodic . . . reviews of your financial status to enable you to [] give money or gifts to Brad & Lee Ann.

---

[15]This letter was written in response to a letter Jaeckle received from Curtis in June 2011. Curtis' letter stated,

> Bob:
>
> I was good to you when you needed help.
> Now it is your turn to be nice to me.
> Come on. You wouldn't let me get by with this.
> Now it is your turn.
> Brad has sent you the information on how much you owe.
>
> Always,
> Jane

15

You were smart enough to figure out that I was going to have a real problem with cash after my divorce—and 5 days later—9/11.

Your offer to help was overwhelming! I did not have a clue as to how long it was going to take to re-pay it—but I knew that it would be the most lucrative investment you would make. If you had that money now, what would it be earning?

In short, we have always been there for each other. My problems are sure taking longer to resolve than I ever imagined. When the agreement with the University of North Texas fell through I was devastated and regretted the loss of several years of effort and the loss of a favorable real estate market.

As you know, everything I could earn after 2001 went toward keeping the Ranch alive. It is still the same today. If I had the money I would have paid this off long ago.

You agreed to be patient and to wait for the Ranch to be sold—and you have been. I thank you more than I can ever say for that!

The last time we reviewed your finances you were in great shape and your future was assured. Your status would even allow for continued annual cash gifts.

If anything has happened to that status please let me know. I don't know what I can do but I'll move heaven and earth to make sure your lifestyle is not jeopardized. If you're ok, I hope you will be patient a little longer.

The Ranch has been listed and a sales brochure is being sent to select prospects.

Kim, Alan and I are praying for some sale results. Alan's health and my age are making it extremely hard to keep the Ranch afloat.

I had hoped to see all of you when Brad and I met in Sulphur Springs. I hope that we still can. I know that you would like to have all loose ends tied up so that your heirs don't have to worry about it. That is my goal too. Open communication is necessary to get this over with. I think the world of you and wouldn't want you to hate me.

This is never out of my mind and I'll keep everybody briefed as progress is made. Please call me whenever you feel like it.

Love,
Bob

"[I]n order for a written instrument to be sufficient to take a debt otherwise barred out of the operation of the statute of limitations, it must acknowledge the justness of the debt and express a willingness to pay. Where the debt is clearly acknowledged, however, the promise to pay is implied." *Bright & Co.*, 995 S.W.2d at 745 (quoting *MMP, Ltd. v. Jones*, 695 S.W.2d 208, 209 (Tex. App.—San Antonio 1985)), *rev'd on other grounds*, 710 S.W.2d 59 (Tex. 1986). Jaeckle admits that he wrote and signed this letter. Jaeckle contends, though, that the letter does not contain an unequivocal acknowledgment of the justness or the existence of the particular obligation, does not refer to the obligation, and does not express a willingness to honor that obligation. Jaeckle further contends that the amount of any obligation described in the letter is not susceptible of ready ascertainment.

Certain portions of Jaeckle's letter refer to the debts Jaeckle owed Curtis.[16] First, the letter acknowledges that Curtis helped Jaeckle and stated that Jaeckle "did not have a clue as to how long it was going to take to re-pay it." Further, the letter states that Curtis' "investment" had been lucrative and implies that if Curtis "had that money now," it would not be earning much interest. Jaeckle acknowledged the justness of the debt when he told Curtis that although he owed the money, he did not have the means to repay it at present. He told Curtis that she had agreed to wait until the Ranch was sold in order to be repaid: "If I had the money I would have paid this off long ago. . . . You agreed to be patient and to wait for the Ranch to be sold—and you have been." Finally, Jaeckle told Curtis that the Ranch had been "listed" and that a sales brochure was being

---

[16]The letter refers to the spread sheets for both notes. Although we only address the $20,000.00 note in this section of the opinion, the reasoning applies equally to both notes.

sent to "select prospects." This language indicates that Jaeckle was taking steps to sell the Ranch in order to repay the debt to Curtis.

In *Friedman v. Worthy Fabrics*, 347 S.W.2d 639, 640 (Tex. Civ. App.—El Paso 1960, no pet.), the court of appeals found revival of a debt after it was barred by limitations based on a letter similar to Jaeckle's letter in the present case. In that case, Friedman was sued on a verified account, but claimed the debt was barred by the statute of limitations.[17] The creditor claimed that a letter it received from Friedman acknowledged the debt, so as to remove the limitations bar to recovery. The court concluded that the letter from Friedman was a clear acknowledgment of the debt and, consequently, an implied promise to pay.[18] *Id.* The same result ensued in *Appell Petroleum Corp.*

---

[17]Because this case involved a suit on a sworn account, there was no dispute as to the amount of the debt.

[18]Friedman's letter stated,

Dear Friend:

Referring to your correspondence regarding my balance:

I greatly regret my inability to liquidate my balance at this time. I happened to an automobile accident in December which kept me from my business for about six weeks. In addition, it so happens that I opened my business in El Paso at the slowest period for business. For these two reasons I have not been able to take care of the matter more promptly.

I am not trying to evade my responsibility and I hope you will understand that I am not offering more excuses, but I hope you will understand that it has been impossible for me to do any different under the circumstances. If you will continue to be patient with me for a bit longer, you may be assured you will hear from me shortly.

Thank you for your kind cooperation.

Very sincerely yours,

/s/ H. Friedman

*Friedman*, 347 S.W.2d at 640.

18

*v. Moreman Tire Co.*, 416 S.W.2d 470 (Tex. Civ. App.—Eastland 1967, no pet.), following the court's determination that a letter from Appell to Moreman Tire Company[19] was a proper written acknowledgement of a debt that constituted a new promise to pay the debt. The acknowledgment thus removed limitations as a bar to collection.[20] Accordingly, Jaeckle's letter constitutes an

---

[19]Appell's letter stated,

> Gentlemen:
>
> With the oil business in its current slump, our company has gotten behind on its accounts payable including the monies due to you. This we certainly regret as we have always paid our accounts in the past.
>
> At the present time, we also have a large amount of accounts receivable and certainly appreciate your position. We do expect, however, to receive payment on a number of these accounts within the next 60 days, and these monies are to be dedicated toward the payment of our accounts payable.
>
> In addition, we are currently in the process of obtaining some additional long term financing and the additional monies obtained from this sum will also be dedicated to your account.
>
> Would you please give us at least another 60 days before taking any action on your account to complete this program of payment on your account.
>
> We do thank you for your many kindnesses in the past and appreciate this courtesy from you at this time.
>
> Sincerely yours,
>
> APPELL PETROLEUM CORPORATION

*Appell*, 416 S.W.2d at 471–72.

[20]*Appell* and *Friedman* were decided under former Article 5539, which stated,

> When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby.

Enacted as part of S.B. 84, relating to adopting and establishing the Revised Civil Statutes of the State of Texas, 1925, 39th Leg., R.S., *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9(1), 1985 Tex. Gen. Laws 3242, 3322. Courts interpreted the statute as requiring a written acknowledgment of the justness of the claim. *House of Falcon, Inc. v. Gonzalez*, 583 S.W.2d 902 (Tex. Civ. App.—Corpus Christi 1979, no pet.); *Allied Chem. Corp. v. Koonce*, 548 S.W.2d 80, 81 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ). As required by current law, the acknowledgement

acknowledgment of the justness of the debt and, as in *Appell* and *Friedman*, serves as a new promise to pay.

### B. Revival of the $35,000.00 Obligation

On cross-appeal, the Estate contends that the trial court erred in failing to conclude that the $35,000.00 debt was also revived by acknowledgment within four years before suit. We agree.[21]

When a party who had the burden of proof brings a legal sufficiency issue complaining of a nonfinding, that party must demonstrate that the evidence established, as a matter of law, all vital facts in support of the finding sought by the party. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In this type of review, we first examine the record for evidence supporting the nonfinding. *Dow*, 46 S.W.3d at 241. If more than a scintilla of evidence supports the nonfinding, our inquiry ends. If no evidence supports the nonfinding, however, we review the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

The initial question is whether there is even a scintilla of evidence to support the trial court's failure to find that the $35,000.00 note was revived by acknowledgement. Jaeckle contends that because Aldridge was unable to locate a $35,000.00 note that could be definitively tied to this

---

must have referred to the obligation. *Gonzalez*, 583 S.W.2d at 905; *Hutchings v. Bayer*, 297 S.W.2d 375, 378 (Tex. Civ. App.—Dallas 1956, writ ref'd n.r.e.). And, as also required by current law, the amount acknowledged need not be specified, but must be susceptible of ready ascertainment. *Gonzalez*, 583 S.W.2d at 905; *Koonce*, 548 S.W.2d at 81; *Bayer*, 297 S.W.2d at 378.

[21]The Estate further contends that the trial court erred in failing to conclude (1) that Jaeckle was estopped from claiming the statute of limitations as a defense to payment, as estoppel was established as a matter of law, and (2) that the $35,000.00 note was modified to provide for payment when the ranch was sold, as modification was established as a matter of law. Because we find that the $35,000.00 note was revived, we need not address the Estate's estoppel and modification issues.

debt, there could be no acknowledgement. Although the trial court found that the parties were unsure of the exact origin of the $35,000.00 loan, it further found that Jaeckle borrowed $35,000.00 from Curtis on behalf of Reunion Ranch. Neither this finding nor any other finding relating to the existence of the $35,000.00 indebtedness has been challenged on appeal.[22] "Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding." *Bendalin*, 381 S.W.3d at 734. Here, Jaeckle testified that he did not owe Curtis $35,000.00 as he had previously paid that debt in full. This evidence is not sufficient to establish, as a matter of law, that Jaeckle did not owe Curtis some remaining amount on the $35,000.00 indebtedness. Thus, we are bound by the trial court's findings that Jaeckle

---

[22]Those findings include the following:

6.      Jaeckle borrowed $35,000.00 . . . from Curtis on behalf of Reunion Ranch.

        . . . .

8.      The parties were unsure of the exact origin of the $35,000.00 loan.

9.      An employee of Jaeckle, Nancy Steel (last name at time of trial, Lewerenz), drafted a letter on Jaeckle's behalf to Curtis on April 15, 2002 confirming the existence of both notes and providing balances and amortization schedules. . . .

10.      Interest payments had been paid by Reunion Ranch on both notes during 1999, 2000 and 2001. Another payment was made in 2004 that was not designated to a particular note.

11.      No other payments were made on either note.

Conclusions of law relating to the $35,000.00 note:

7.      The Court finds that the statute of limitations began to run on the $35,000.00 note on June 1, 2004, the date of the last payment.

8.      The Court finds that the statute of limitations ran on the $35,000.00 [debt] on or about June 1, 2008, four years after the last payment.

borrowed $35,000.00 from Curtis and that certain interest payments were made on that indebtedness in 1999, 2000, and 2001. Those interest payments, as reflected by the evidence at trial on which this finding was based, were for $241.10, $233.33, and $217.84. The sum of those payments is not sufficient to exhaust a $35,000.00 obligation; further, as they were interest payments, they would not have even decreased the principal that was owed.

We next turn to the question of whether the evidence establishes, as a matter of law, that the $35,000.00 debt was revived. The elements of revival, having been previously set out, will not be repeated here. It will suffice to say, though, that there is no requirement that a debt subject to revival must originate from a written promissory note. The statute simply refers to a "claim." TEX. CIV. PRAC. & REM. CODE ANN. § 16.065. Caselaw on revival refers variously to a "debt" or an "obligation." *See Stine*, 80 S.W.3d at 591; *Bright*, 995 S.W.2d at 745; *Friedman*, 347 S.W.2d at 640; *Alsheikh v. Arabian Nat'l Shipping Corp.*, No. 14-05-00787-CV, 2006 WL 1675384, at *3 (Tex. App.—Houston [14th Dist.] June 20, 2006, no pet.) (mem. op.).

Jaeckle's letter to Curtis, as previously discussed, acknowledges the justness of the debt and expresses a willingness to honor that obligation as to the $20.000.00 note. There is no basis for distinguishing the letter's effect on the $35,000.00 note from its effect on the $20,000.00 note.[23] The letter refers to the "spread sheets," and the evidence established that two schedules, one for each debt, were attached to and referenced by Aldridge's letter and were referenced by Curtis' letter to Jaeckle. Thus, Jaeckle's letter to Curtis acknowledges the justness of and expresses a willingness to honor the $35,000.00 note as well as the $20,000.00 note.

---

[23]*See supra* note 7 and accompanying text.

22

## C.   Jaeckle's Counter-Arguments Against Revival

Jaeckle raises two counter-arguments against a finding of revival as to both notes.  First, he argues that the amounts of the obligations described in the letter are not readily ascertainable. *See Stine*, 80 S.W.3d at 592 (citing *Stefek v. Helvey*, 601 S.W.2d 168, 171 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.)).  Jaeckle relies on caselaw in which the acknowledgment itself identified the amount of the indebtedness.  *See, e.g.*, *Stine*, 80 S.W.3d at 592 (acknowledgment stated balance owed would be due on determination that proceeds from sale of residence were insufficient to repay $50.000.00 indebtedness in full); *Bright & Co.*, 995 S.W.2d 742, 746 (fax and production charts showed and acknowledged $22,268.20 debt); *see also Dominguez v. Castaneda*, 163 S.W.3d 318, 324 (Tex. App.—El Paso 2005, pet. denied) ($25,000.00 loan confirmed and promise to pay made in Chapter 13 Bankruptcy proceedings).

Nevertheless, as long as the amount of the obligation can be readily ascertained, the acknowledgment need not state the amount of the obligation.  *Stine*, 80 S.W.3d at 592–93.  Here, the trial court relied on Jaeckle's own testimony regarding the amount of the obligation referenced in the letter.[24]  Jaeckle testified that the letter to Curtis was written in response to Curtis' letter of June 17, 2011.  Curtis' letter specifically stated, "Brad [Aldridge] has sent you the information on how much you owe."  Jaeckle testified that he received spreadsheets from Aldridge on the two

---

[24]Jaeckle complains that the trial court erred in relying on his deposition and trial testimony, in addition to a handwritten letter from Jaeckle to Curtis, in determining whether the statutory requirements were satisfied.  Because Jaeckle's letter qualifies as a writing signed by the party to be charged, it is apparent that the trial court did not rely on Jaeckle's oral testimony to establish the existence of the written acknowledgment, but simply relied on that testimony to supplement that letter and provide missing information such as the amount of the debt owed.  It did not err in so doing. *See supra* note 22.

23

notes. Jaeckle explained that he thanked Curtis in his letter for the spreadsheets containing amortization schedules Aldridge sent to him in May 2011.

Those amortization schedules reflect the balances due, accrued interested, payoff amount, and a payoff amount with compound interest as it relates to the $20,000.00 note from February 2001 through May 2011. Likewise, the amortization schedule for the $35,000.00 note reflects the balance due, accrued interest, payoff amount, and a payoff amount with compound interest from September 2000 through May 2011. Thus, the obligations to which the letter referred were susceptible of ready ascertainment. *See id.* at 581. The trial court, therefore, did not err in concluding that Jaeckel's July 2011 letter to Curtis sufficiently acknowledged the $20,000.00 debt to Curtis so as to remove the limitations bar as a barrier to collection, and because there is no basis for distinguishing between the two notes, the trial court erred in failing to make the same conclusion regarding the $35,000.00 debt.[25]

Second, Jaeckle relies on caselaw stating that where there are several claims against the same debtor, a general acknowledgment will not take any of them out of the statute of limitations.

---

[25]The fact that there is no existing written note memorializing the $35,000.00 debt or that the parties testified to the existence of more than one $35,000.00 debt does not prevent recovery for the $35,000.00 debt claimed by the Estate. Likewise, the fact that Jaeckle's letter does not specifically identify either one of the debts is not fatal either. Curtis' letter to Jaeckle referenced Aldridge's letter to Jaeckle, which contained amortization schedules for both debts. Jaeckle's reply letter to Curtis referenced Aldridge's letter and the two spreadsheets. Moroever, Jaeckle's oral testimony supplied additional information. While an acknowledgement sufficient to revive a debt barred by limitations must be in writing and signed by the debtor, the specifics of that debt need not be in the debtor's writing alone, but may be supplemented by correspondence exchanged between the debtor and the creditor which references the debt. *See Tex. Co. v. Wilbanks*, 105 S.W.2d 448, 449 (Tex. App.—Amarillo 1937, no writ) (debtor's letter stating only "I have checked the statement and found it to be correct" was sufficient to revive debt even though amount owed never mentioned where creditor's letter referenced amount owed and included statement of account). As noted, the amount of the obligation described in the acknowledgment need only be "susceptible of ready ascertainment." *Stine*, 80 S.W.3d at 591. Thus, the various letters between the parties and Jaeckle's oral testimony satisfied this requirement.

*See Cotulla v. Urbahn*, 135 S.W. 1159 (Tex. 1911).[26] Nevertheless, a review of the cases considering that issue compels the conclusion that Jaeckle's letter was not a general acknowledgement of several debts, but a specific acknowledgement of two debts. For instance, in *Alsheikh*, 2006 WL 1675384, at *3, the borrower, Alsheikh, executed two promissory notes to Arabian on May 21, 1990, that totaled approximately $154,000.00. *Id*. at *1. The record included several checks and receipts signed by Alsheikh reflecting payments on the two notes from 1990 through 2004. Two receipts noted that payment was toward "the out standing [sic] Loan [Alsheikh] borrowed from [Arabian]" and "the outstanding Loan [Alsheikh] has with Arabian," respectively. *Id*. Arabian claimed that by writing checks and by signing and noting receipts in 2001 through 2004, Alsheikh acknowledged his debt, and the court so found. *Id*. at *2. Additionally, Alsheikh never indicated any intent to repudiate the debt, but instead signed receipts reflecting payment on his outstanding debt to Arabian. *Id*. While the court noted that "the failure to specify a particular debt may defeat a claim of acknowledgment," there was sufficient evidence that Alsheikh's acknowledgement applied to both debts. *Id*. at *3. Both parties referred collectively to the notes and treated them as one debt. *Id.* at *3. Further, Alsheikh signed a receipt certifying payment of $2,000.00 in two checks of $1,000.00 each toward the "out standing [sic]

---

[26]*Cotulla* involved the debt sued on by Urbahn and a debt Cotulla owed a bank. Urbahn sued Cotulla, and to avoid the limitations bar, produced letters Cotulla had written to the bank acknowledging the debt in general terms and promising to pay that debt. However, because the promise was not made to Urbahn (the case does not indicate if Urbahn has any connection to the bank) and because the letters were not addressed to him and did not refer to his debt, the letters could not revive Cotulla's debt to Urbahn. *Cotulla*, 135 S.W. at 1161.

25

Loan on the Land," suggesting that $1,000.00 was paid on each note, "thus acknowledging both Notes."[27] *Id*.

Here, Jaeckle never repudiated the debts. In conversations Jaeckle had with Aldridge, Aldridge referred to both the $20,000.00 note and the $35,000.00 note. During these conversations, Jaeckle never denied owing the notes, never indicated that they were gifts, and never disputed the amounts of the two notes. More importantly, Jaeckle's letter to Curtis acknowledges two spreadsheets showing amortization schedules for both debts. There is no discernable difference in the evidence pertaining to acknowledgment of the $20,000.00 note and the evidence pertaining to acknowledgement of the $35,000.00 note.[28] We, thus, conclude that the evidence shows, as a matter of law, the Jaeckle acknowledged the $35,000.00 note in his July 2011 letter to Curtis. This acknowledgement took place within four years of the time suit was filed in July 2012.

### D.     Modification, Breach of Fiduciary Duty, and Promissory Estoppel

In his next point of error, Jaeckle contends that the trial court erred in entering any finding of fact or conclusion of law premised on modification, breach of fiduciary duty, or promissory estoppel, since these matters were not affirmatively raised in response to Jaeckle's statute of

---

[27]*Alsheikh* was a summary judgment case in which the court ultimately held that Alsheikh failed to negate any essential elements of Arabian's acknowledgment claim. *Alsheikh*, 2006 WL 1675384, at *3.

[28]True, Jaeckle testified that he intended to repay Curtis $20,000.00, but this testimony was not specifically tied to his 2011 letter and, in any event, was not required to meet the legal standard for acknowledgment.

26

limitations defense.[29]  *See* TEX. R. CIV. P. 94.[30]  If an affirmative defense is not pled or tried by consent, it is waived, and the trial court has no authority to find facts related to that issue.  *See Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied); *Matter of Marriage of Collins*, 870 S.W.2d 682, 684–85 (Tex. App.—Amarillo 1994, writ denied).

The Estate contends that promissory estoppel and modification were sufficiently pled as reflected in the following language from its first amended petition:  "Defendant has not paid off said balance despite repeated assurances and promises that he would do so once he sold his ranch.  Decedent waited patiently for him to do so up to her death[,] but payment never came."  This single sentence is subsumed within the factual allegations of the petition.  It is not a clear assertion of the affirmative defenses of promissory estoppel and/or modification.

Yet, even if the Estate did not sufficiently plead promissory estoppel and modification, we find that these issues were tried by consent.  Trial by consent applies in the exceptional case where the record as a whole clearly demonstrates that the parties tried an unpled issue.  *Reed v. Wright*, 155 S.W.3d 666, 670 (Tex. App.—Texarkana 2005, pet. denied); *Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.).  To determine whether an issue was tried by

---

[29]Jaeckle does not specifically complain of a particular finding or conclusion and does not attack the legal or factual sufficiency of the evidence supporting any finding or conclusion relating to modification, breach of fiduciary duty, or promissory estoppel.  Although the trial court concluded that Jaeckle and Curtis had a fiduciary relationship, this conclusion does not impact any legal conclusion subject to challenge.  Accordingly, we do not determine whether this unpled issue was tried by consent.

[30]While Jaeckle contends that he "repeatedly objected to these matters and eventually even asked for a continuance," he fails to provide any citation to the record where such objections were made or where he moved the trial court for a continuance on this basis.  Our review of the record revealed no objections to a lack of pleading on the issues of promissory estoppel or modification.

consent, appellate courts "must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." *Mastin*, 70 S.W.3d at 154.

Initially, the Estate claimed in opening statements that Jaeckle and Curtis had agreed that Curtis would wait to be paid until such time as the ranch was sold and that Curtis relied on that promise to pay. The Estate opined that Jaeckle had neither "performed that within a reasonable time nor made reasonable efforts to do so." Later, the Estate argued that Jaeckle was estopped from relying on the statute of limitations, arguing that the agreement to wait to repay the debt until the ranch was sold was a modification. The Estate took the position that Jaeckle had promised to pay the notes if Curtis would give him time to sell the ranch.

This theme was echoed throughout the trial. Aldridge testified that Curtis loaned the money to Jaeckle, who continued to promise to repay the money when the ranch was sold. He believed Curtis relied on Jaeckle's promise that if Curtis would wait until the ranch sold, the debt would be repaid. Jaeckle testified that he promised to pay Curtis when the ranch sold, that Curtis should have been able to rely on that promise, that it was not unreasonable for Curtis to rely on the promise, and that Curtis did, indeed, rely on the promise.

Finally, when the Estate offered into evidence a 2010 audio-recorded conversation in which Jaeckle stated that the debt he owed Curtis was Reunion Ranch's largest debt, Jaeckle objected that the recording was irrelevant because it was made well past the time the statute of limitations had run on the notes. The Estate responded, "It also goes towards the fact that there was a

modification entered into where an agreement was made for Mrs. Curtis to wait . . . ."[31]   Our examination of the record, as outlined above, indicates that the issues of modification and promissory estoppel were tried by consent.

_____

[31]In closing, the Estate argued,

> Mr. Jaeckle is estopped from claiming limitations when he entered into and made a promise that she relied upon to make her way past the limitations . . . before he was going to pay her.  She relied on that, and he can now not turn back from that and use limitations to bar her.
>
> . . . .
>
> I've got Mr. Jaeckle's own handwritten letter acknowledging that that happened, continuing to make representations that payment would be made upon the sale of the property, which is consistent with the testimony by Mr. Aldridge and his wife that she had indicated they reached that type of an agreement and that she had relied upon it.  He got up there and said she relied upon it and agreed that she relied upon it.
>
> . . . .
>
> Jaeckle paid a thousand dollars on the . . . Reunion Ranch note in 2004.  So, he was still making payments in 2004.  Mr. Aldridge said by 2005 he was already having conversations with Mrs. Curtis about Bob's told me that he'll pay me when he sells the ranch . . . and then Bob in his letter says you agreed to wait till I sold the ranch.
>
> . . . .
>
> What I did plead was the facts, which that he made a repeated promise to pay when the -- that's in my petition.  He made repeated promises, she continued to wait, and he never paid her.
>
> . . . .
>
> He admits that he told her he would pay her when he sold the ranch and that she relied upon it.  I mean, this -- the limitations never [ran] because of that reason.
>
> . . . .

In discussing the agreement that Curtis would wait for repayment until the ranch was sold, the Estate argued, "[T]hat was a modification of the original agreement . . . there's no reason they can't enter into an oral agreement to modify when the note is going to get paid."

**E.      Sufficiency of the Evidence to Uphold the Trial Court's Judgment**

In his next point of error, Jaeckle contends that "the evidence as a whole is legal [sic] insufficient to uphold the trial court's judgment." More specifically, Jaeckle claims that the evidence is legally insufficient to show that he owes anything, because the evidence does not indicate (1) what amount was due, (2) what the interest rate might have been, and (3) when the note was payable. In short, Jaeckle claims "there is nothing to support the judgment of thousands of dollars of interest over an undetermined amount of principle, accruing for well over a decade, and due at an uncertain time."

"When a party appeals from a nonjury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question." *Dominguez*, 163 S.W.3d at 326 (citing *Fiduciary Mortg. Co. v. City Nat'l Bank*, 762 S.W.2d 196, 204 (Tex. App.—Dallas 1988, writ denied)). Although Jaeckle does not explain which factfindings or legal conclusions he is challenging, we have nevertheless reviewed the substance of this point of error to determine, as best we can, which factfindings and legal conclusions he implicitly challenges. *See Storck v. Tres Lagos Prop. Owners Ass'n, Inc.*, 442 S.W.3d 730, 735 (Tex. App.—Texarkana 2014, pet. denied); *Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 888 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)

---

The Estate further argues, "There was a valid modification of the agreement . . . which is one reason why we're not barred by limitations." The trial court asked counsel about the effect of the modification, to which the Estate replied, "The effect of that modification was to change the principal balance and the interest was due." The trial court queried, "And the modification was -- when you sell the ranch." The Estate responded, "And -- and in the context of I'm going to sell the ranch, I have plans to sell the ranch, and if you'll just wait. [W]hat gets me around limitations, again, is the modification . . . . [T]here was, in fact, a modification and there was, in fact, these representations made."

30

(construing appellant's challenges, which failed to specify findings and conclusions being challenged, as challenges to pertinent findings and conclusions supporting complained-of aspects of judgment); *see also* TEX. R. APP. P. 38.9; *Sterner*, 767 S.W.2d at 690 (points of error construed liberally "in order to obtain a just, fair and equitable adjudication of the rights of the litigants").

Findings of fact entered in a case tried to the court, as here, "are of the same force and dignity as a jury's answers to jury questions." *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). The trial court's findings of fact are reviewable for legal and factual sufficiency by the same standards that are applied in reviewing legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). We will sustain such a challenge only when the record discloses (1) a complete absence of evidence of a vital fact, (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) that the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) that the evidence established conclusively the opposite of a vital fact. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence furnishes

31

some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Jelinek*, 328 S.W.3d at 532.

We conduct a de novo review of the trial court's conclusions of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law are not reviewable for factual sufficiency, we may review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id.*

The trial court entered the following findings of fact and conclusions of law relative to Jaeckle's general complaint that the evidence was legally insufficient to sustain the judgment in the sum of $43,828.10—representing principal and interest on the $20,000.00 note:

**Findings of Fact**

. . . .

6. Jaeckle borrowed . . . $20,000.00 from Curtis on behalf of Reunion Ranch.

. . . .

9. An employee of Jaeckle, Nancy Steel (last name at time of trial, Lewerenz), drafted a letter on Jaeckle's behalf to Curtis on April 15, 2002 confirming the existence of both notes and providing balances and amortization schedules.

10. Interest payments had been paid by Reunion Ranch on [the note] during 1999, 2000 and 2001. Another payment was made in 2004 that was not designated to a particular note.

11. No other payments were paid on [the note].

12. Regarding the $20,000.00 note, evidence supported the following payments being made by Reunion Ranch to Curtis on the following dates toward that note, to-wit: $867.28–2/1/99; $867.28–8/1/99; $867.28–2/1/00; $867.28–2/23/00; and $1,000.00–6/1/04.

32

13. At approximately the same time that Nancy sent Curtis the letter outlining the loan balances [2002], Jaeckle and Curtis entered into an agreement that Curtis would wait to be paid on the notes until Jaeckle and Reunion Ranch could sell the land and improvements that made up Reunion Ranch's assets.

. . . .

17. Jaeckle testified at his deposition and trial that Curtis did loan him the $20,000.00, and that he did owe Curtis the money and intended to pay it.

### Conclusions of Law

. . . .

2. Jaeckle, on behalf of Reunion Ranch, entered into a valid loan agreement with Curtis as outlined in Exhibit "A" attached hereto.

. . . .

11. Given the interest rate of 8% per annum, and giving credit for payments made, the Court finds that the amount owed by Jaeckle and Reunion Ranch, Inc. on the $20,000.00 note as of the date of the Final Judgment was $43,828.10.

. . . .

15. The Court finds that the $20,000.00 note was modified to change the due date for payment until the ranch property sold but that it was inferred in that agreement that the sale would occur within a reasonable time period and that Jaeckle would make reasonable efforts to sell the property.

### 1. Legally Sufficient Evidence Supports the Fact Findings

Jaeckle denied owing any money to Curtis and, instead, claimed the $20,000.00 note was paid in full. As discussed previously, Jaeckle offered evidence that the $20,000.00 note was paid when the Saturn Property was sold to Kozlovsky. Other evidence showed, however, that Jaeckle made payments on the $19,377.67 note in the amount of $867.28, in February 1999, February 2000, August 2000, and February 2001. Jaeckle could not explain why he continued to pay on a note he claimed was paid in full in October 2000. Also, the amount of Jaeckle's payments are

33

consistent with the amortization schedule pertaining to the note provided by Jaeckle's secretary, Lewrenenz, to Curtis in April 2002.[32]

Moreover, in May 2011, Aldridge sent Curtis a letter that included an amortization schedule for the $20,000.00 note. Jaeckle neither told Aldridge that he did not owe the money nor disputed the amortization schedule. After Jaeckle received the May 20, 2011, letter, he wrote Curtis and asked her to thank Aldridge for the spreadsheets. And, as outlined previously, Jaeckle's July 2011 letter to Curtis included an apology for not having repaid the debt and, again, asked for patience until he could sell the ranch. Because the record contains more than a scintilla of evidence to support the trial court's findings, as listed above, we conclude that the evidence is legally sufficient to support those findings.

### (2)   No Error in Legal Conclusions

From these findings, the trial court correctly concluded that Jaeckle entered into a valid loan agreement with Curtis and applied an interest rate of eight percent as provided for in the $20,000.00 note. Jaeckle complains that the trial court applied this interest rate "for well over a decade," and that the note was "due at an uncertain time." The trial court found, however, that Jaeckle "acknowledged a debt owing to Curtis over a number of years but had no intention of ever paying her as promised." The trial court thus determined that a reasonable due date was implied.

---

[32]Although Jaeckle testified that he did not authorize Lewerenz to write this letter, he also testified that if Lewerenz typed a letter, it would have been because he asked her to do so. Lewerenz did not have intimate knowledge of Jaeckle's business affairs. Instead, the information included in letters written by Lewerenz was provided by Jaeckle. Lewerenz testified that she could not recall ever sending a letter on Jaeckle's behalf without his authorization.

Further, where a date for performance is not specified in the acknowledgment, the statute begins to run on the date of the acknowledgment. *Browne v. French*, 22 S.W. 581, 584 (Tex. Civ. App. 1893, no writ); 50 TEX. JUR. 3d *Limitation of Actions* § 151, at 488 (1986); *see House of Falcon, Inc.*, 583 S.W.2d at 905; *City of Houston v. Moody*, 572 S.W.2d 13, 16 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).[33] In *Wilbanks*, the Court of Appeals noted, "An unqualified and unequivocal acknowledgement in writing on the part of the debtor, of the existence of the indebtedness, unaccompanied by expressions indicating an unwillingness to pay same, will raise the implication of a new promise to pay the indebtedness." *Wilbanks*, 105 S.W.2d at 449, (citing *Elsby v. Luna*, 15 S.W.2d 604, 605 (Tex. Com. App. 1929)). Thus, there is legally sufficient evidence to support the trial court's findings regarding the $20,000.00 note.

---

[33]We further interpret this complaint as an attack on the trial court's conclusion that the $20,000.00 loan was modified to be due and payable when the ranch was sold. Jaeckle's sole argument here is that "none of these documents amortization schedules[,] and spreadsheets, "other than the long since due 1999 note[,] provide any terms. Further, there is no discussion that Curtis approached the Ranch regarding any payment or modification of any terms other than what was in the 1999 note." Jaeckle cited no caselaw in his brief to support an assertion that the trial court incorrectly concluded the note was modified, or that Jaeckle was promissorily estopped from relying on the statute of limitations defense. We find that these issues have been inadequately briefed. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that a brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An inadequately briefed issue may be waived on appeal. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing); *In re A.S.*, 241 S.W.3d 661, 663 (Tex. App.—Texarkana 2007, no pet.). Because Jaeckle failed to brief the issues relating to the propriety of the trial court's legal conclusion that the loan was modified as a result of his oral agreement with Curtis and whether a reasonable due date was properly implied under the circumstances, we overrule any point of error raised with respect to these legal conclusions.

## F.       Evidentiary Rulings

In his final point of error, Jaeckle presents a global complaint that the trial court committed harmful error by admitting evidence in violation of Rules 601(b), 802, and 804[34] of the Texas Rules of Evidence.  The record contains numerous rulings relating to evidentiary objections, including hearsay objections and objections premised on Rule 601(b), otherwise known as the Dead Man's Rule.[35]  The Texas Rules of Appellate Procedure require an appellant to provide "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  *See* TEX. R. APP. P. 38.1(i).  "Bare assertions of error, without argument or authority, waive error." *McKellar v. Cervantes*, 367 S.W.3d 478, 484 n.5 (Tex. App.—Texarkana 2012, no pet.).  Because Jaeckle failed to specifically identify a single statement or document that the court admitted in alleged violation of the referenced evidentiary rules, any argument regarding improperly admitted evidence under these Rules has been waived.

Jaeckle further complains of the admission of Lewerenz' April 15, 2002, letter to Curtis, claiming it was not properly authenticated pursuant to Rule 901 of the Texas Rules of Evidence.

---

[34]Specifically, Jaeckle's brief states, "[T]he Dead Man's Statute and the hearsay rules prohibit any testimony in these type cases, for the purpose of insuring the fairness of a proceeding when death prohibits rebuttal. *Adams v. Barry*, 560 S.W.2d 935, 937 (Tex. 1978); TEX. R. EVID. 802, 804, 601(b)."

[35]This Rule states,

> In civil actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify thereto by the opposite party; and, the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent based in whole or in part on such oral statement.

TEX. R. EVID. 601(b).

A document is properly authenticated under this Rule when the evidence is "sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Lewerenz testified that she did not recall the letter and "could not say for sure" if she signed the letter. The substance of the letter, personally written by "Nancy" to Curtis, had to do with money Jaeckle owed Curtis. The letter was located among Curtis' business records, along with other records of transactions between Curtis and Jaeckle. Lewerenz admitted that the signature "could be" hers, but stated that she did not "normally sign [her] name like that." Lewerenz agreed that the "N" in the signature of "Nancy" on a handwritten post-it note located on one of the payment stubs introduced into evidence looked "considerably similar" to the "N" in the signature of "Nancy" on the letter in question. Moreover, Lewerenz testified that she knew Curtis and that she was the only "Nancy" who worked for Jaeckle. Finally, Lewerenz, a former, long-time employee of Jaeckle, testified that she was provided a copy of the letter before trial by the Estate and that she told Jaeckle she had written the letter.

This evidence is sufficient to support the trial court's implicit finding, on admission of the letter, that the letter was what the Estate claimed it to be—a letter written by Lewerenz to Curtis regarding Jaeckle's indebtedness to Curtis. We find no abuse of discretion in the admission of this evidence.

## V.    Conclusion

We affirm the trial court's judgment to the extent it concludes that the Estate recover actual damages from Jaeckle and Reunion Ranch, Inc., jointly and severally, in the sum of $43.828.10. We reverse the trial court's judgment, in part, as it fails to grant recovery for the $35,000.00 debt,

which was revived by acknowledgement four years before suit was filed. We render judgment that the Estate recover against Jaeckle for the $35,000.00 debt, and we remand the case to the trial court for a determination of the total amount of damages the Estate is entitled to recover against Jaeckle, individually, on the $35,000.00 note.[36]

Ralph K. Burgess
Justice

Date Submitted:     March 4, 2015
Date Decided:       June 3, 2015

---

[36]Jaeckle appealed the trial court's judgment as to the $20,000.00 note. The Estate cross-appealed as to the trial court's judgment on the $35,000.00 note against Jaeckle only, but it conditionally asserted its cross-appeal against Reunion Ranch in the event we denied its motion to dismiss Reunion Ranch's appeal. Because we have granted the Estate's motion to dismiss Reunion Ranch, we only render judgment on the $35,000.00 note as to Jaeckle.

38